## Chadwick *against* Moore.

A local statute which suspends, for a reasonable time, execution of a judgment on a previous contract, is not prohibited by the tenth section of the first article in the constitution of the United States.

Therefore the statute enacted by the Legislature of Pennsylvania in 1842, and suspending for a year a sale on execution for less than two-thirds of the appraised value, is not unconstitutional in respect of its retrospective operation.

ERROR to the District Court of *Allegheny* county.

In April 1844, William Moore obtained a judgment against James Chadwick on a *scire facias* to have execution of premises mortgaged in July 1838, and sued out a *levari facias* to July term 1844, on which the sheriff sold for less than two-thirds of the appraised value.   The statute of 1842 directs that lands taken in execution shall be valued by an inquest, and that " when the same cannot be sold at public vendue or outcry for two-thirds or more of such valuation or appraisement, the sheriff shall not make sale of the premises, but shall make return accordingly to the court from which the execution issued, and thereupon all proceedings shall be stayed for a year from the return day."   The question which arose out of these facts on a case stated was, whether this

statute is prohibited by the constitution of the United States, so far as regards retrospective operation; and it was argued in this court, on a writ of error to the District Court in which the statute had been adjudged unconstitutional, by

*Eyster* and *Kline,* for plaintiff in error.   Cited, 1 *Howard's R.* 320; 2 *Howard's R.* 312.

*Mellon,* for defendant in error.

The opinion of the Court was delivered by

GIBSON, C. J.—In this instance we are to take the law of the case from the Supreme Court of the United States, the constitutional expositor of federal legislation, whether ordinary or fundamental; and haply the reports of its decisions furnish us with principles which go far to rule the point in contest.   We are to determine whether our Act of 1842,.which prohibits for a time sheriffs' sales of property for less than two-thirds of the appraised value, impinges on the tenth section of the first article in the federal constitution, so far as it modifies the remedy to enforce contracts which existed when it was enacted.   The statute of Illinois, which was the subject of discussion in *M'Cracken* v. *Hayward,* (2 *Howard's R.* 608), differed from it in the cardinal feature that its prohibition of execution was perpetual; and if such were the provision before us, we would not hesitate to pronounce it void.   Its duration, however, is limited.   The Act directs land taken in execution to be appraised, and it ordains that if it be not bid to two-thirds of the appraised value, the execution shall be stayed for a year, at the expiration of which the creditor may proceed with it as if it had not been suspended.   The statute of Illinois had no such limitation.   Its denial of execution was perpetual, except on terms not originally contemplated; and it not merely impeded the remedy, but changed the conditions of the right. The statute of Pennsylvania suspends the remedy only; still, it may be asked, if it can constitutionally do so for a year, why not for a thousand years, or any other period, amounting in effect to perpetuity?   It has been shown by Chief Justice TANEY, in *Bronson* v. *Kinsie,* (1 *Howard's R.* 317), that the remedy is parcel of the right, and that the obligation of a contract may not be impaired by acting on the remedy more than it may by acting directly on the contract itself.   He adopted, at the same time, the language of Mr Justice STORY in *Green* v. *Biddle,* (8 *Wheat.* 17), affirming that acts of State legislation, which, while professing to regulate the remedy, and not to modify the right, " so change the nature and extent of existing remedies as *materially* to impair the rights and interests of the owner, are¯as much a violation of the compact as if they directly overturned his rights and interests."   It would be impossible to find a rule precisely adapted to every case, and

[Chadwick v. Moore.]

the Chief Justice illustrated his principle by examples which show that he held no more than the essentials of the contract to be inviolable. He admitted that to exempt articles of the first necessity from execution, or to accelerate the bar of the Statute of Limitations, is not to modify the remedy so as to impair the obligation of the contract. Yet, as such modifications cramp the creditor's freedom of action, and decrease the fund from which he is to obtain satisfaction, they act on the contract to at least an inconsiderable extent. He seems to put the question on the degree of their action, though Mr Justice STORY had said in *Green* v. *Biddle* that some strong cases put by him for purposes of illustration, differed from the one before him only in the degree; whence it might be inferred that he went for the absolute integrity of the constitutional principle. So far as I am at liberty to choose, I prefer the doctrine of the Chief Justice as better suited to a federative system like ours, whose complexity is such that the bodies which revolve in it would not perform their functions if they were straitened in their orbits. If regulation of the remedy were prohibited whenever it might affect the fruition of the right in any imaginable degree, much wholesome legislation would be shut out, and even the instances put by the Chief Justice would not be licensed. But perhaps there is no real discrepancy in the opinions of the Judges. In *Jackson* v. *Lamphire,* (3 *Peters's R.* 290), Mr Justice BALDWIN, speaking for the whole court, said that it is within the undoubted power of State Legislatures to pass recording Acts by which a grant in existence at the time of the enactment may be postponed, or Acts of Limitations restrictive of the remedy. "Reasons of sound policy," he said, "had led to the adoption of general laws of both descriptions, and their validity cannot be questioned. The time and manner of their operation, the exceptions to them, and the acts from which the time limited shall begin to run, will generally depend on the sound discretion of the Legislature, according to the nature of the titles, the situation of the country, and the *emergency* which leads to their enactment. Cases may occur where the provisions of a law on these subjects may be so unreasonable as to amount to a denial of right, and call for the interposition of the court; but the present is not one." This doctrine, pregnant with good sense, is the only one which will enable the State and federal governments to perform their functions without collision; yet a recording Act which postpones a conveyance in default of performance of a superadded condition, impairs the obligation of the contract as much as does a law to stay for a time the execution of it. But, taking the principle as we are able to collect it, rather from dicta of the judges than from points decided by them, we are to decide whether the temporary restraint of a remedy necessarily impairs the right in an unreasonable degree. I lay out of the case those considerations arising from the form of the security, which seem to have weighed with the court in *Bron-*

[Chadwick v. Moore.]

*son* v. *Kinsie.* Did the statute cut the mortgagee off from recovering on his legal title in ejectment, it would doubtless be unconstitutional in that particular aspect; but proceeding by *scire facias* to recover his debt by execution of the land, he stands as would any other judgment creditor. Though unlimited in its duration, this statute was evidently produced by the emergency which arose from collapse of the credit system; and taking from it the right to sell for two-thirds the value, reserved for the benefit of the creditor, it becomes an unconditional law to suspend the enforcement of the contract for a year. Is such an exercise of the sound discretion spoken of, so unreasonable as materially to impair the remedy, and amount to a denial of the right? To hold that a State Legislature is incompetent to relieve the public from the pressure of sudden distress by arresting a general sacrifice of property by the machinery of the law, would invalidate many statutes whose constitutionality has hitherto been unsuspected. An indefinite prohibition of execution in default of compliance with new and arbitrary terms, would be a denial of the remedy contemplated in the contract, not a regulation of it; but there are laws for a temporary suspension which have not been thought so. Such is our statute to stay for three weeks execution of a judgment on demurrer, special verdict or case stated, in order to give the unsuccessful party a *supersedeas* by writ of error. True it is that a statute which gives time for something to be done in respect to the determination of the right, is more decisively superior to exception than one which gives time for the sake of procrastination merely; but we have stay laws enacted in 1836, and operating in actions on contract for periods graduated to the amount of the debt, whose validity has not been contested; and they certainly modify the remedy no further than does a statute of limitations which contingently cuts off all remedy whatever, or one which narrows the creditor's recourse to the debtor's property. I believe, too, that laws imposing military service on apprentices, or dissolving the contract of marriage for causes not declared at the time of its solemnization, have not been resisted; and practical cotemporaneous usage goes far to settle a question of construction. Suspensions of execution for a reasonable time have not been unfrequent in some of our sister States, and creditors have submitted to them as regulations depending, in the language of Mr Justice BALDWIN, "on the sound discretion of the Legislature, according to the emergency which led to their enactment." I have found no trace of a question raised on their validity in the reported decisions of the tribunal of the last resort. On the whole, therefore, the Act before us appears not to be so unreasonable as to call for judicial interposition. Yet the case is by no means a clear one; and as the decision of it involves the validity of other Acts of the same stamp, it is worthy of being brought before the Supreme Court of the nation. To put the case in train for that, it would be ne-

[Chadwick v. Moore.]

cessary for us to sustain the statute at all events; for the appellate jurisdiction of that court extends no further than to cases in which the judgment is in favour of the legislation or authority to which the federal constitution, or an Act of Congress, is supposed to be repugnant; in other words, it extends no further than is necessary to maintain the supremacy of federal legislation. As an erroneous judgment adverse to the authority of the State Legislature would be irremediable, we have deemed it our duty, in cases of difficulty or doubt, to put the judgment in such a shape as would make it the subject of a writ of error. In this instance, however, the judgment falls in with the current of our opinion; and if it is erroneous, it will give us pleasure to have it corrected by the constitutional guardian of federal authority.

Judgment reversed, and rule absolute.