*Orphans' Court, Dauphin County, June 22d, 1852.*

IN THE MATTER OF THE SETTLEMENT OF SEAL'S ESTATE.

Three hundred dollars cannot be allowed to the widow and children of an intestate under the act of 26th April, 1850, when his estate is insolvent, and the debts were contracted prior to July 4th, 1849.

The act of 26th April, 1850, must be construed in connection with that of 9th April, 1849. Any law exempting a greater amount of property from levy and sale on execution than was so exempted at the time of contracting the debt, is unconstitutional and void.

BY THE COURT.—A single exception has been filed to the administration account in this case, which is to the allowance of $300 for the widow and children of the intestate. It is admitted that the intestate died on July 14th, 1850, leaving a widow and several minor children, who were living with him at the time of his death; also leaving the real and personal estate referred to in the administration account, and no other property or effects; that the estate is insolvent, whether the $300 claimed for the widow and children be taken by them or not. That there is due by the decedent to creditors, whose debts were contracted prior to July, 1849, a sum greatly exceeding $300; and their debts will not be paid in full, even if the widow and children are not allowed to take that sum out of the property and effects of the decedent. Those creditors are the objectors in the present case. The administrator claims the right to pay over to the widow and children the sum of $300 under section 25 of the act of 26th April, 1850. The creditors object: First. Because their debts, being contracted prior to July 4th, 1849, the act does not exempt the property as to them; that it must be construed in connection with the act of 9th April, 1849, to which it refers, and is in a measure supplemental. Second. If the law is not so construed, but is an absolute discharge of the goods of an insolvent decedent without regard to the time of contracting the debt, it is unconstitutional and void, so far as it tends to impair the obligation of contracts. The right to modify the remedy has, to some extent, been recognized, provided it does not substantially impair the obligation, or materially affect the interests of the contracting parties. It has been held by the court of last resort under the Federal Constitution, that a law discharging the person of the debtor from arrest and imprisonment, did not impair the obligation, as the remedy against the property remained, and the confinement of the person was at last but a method of obliging payment, by compeling the delivery of the property and effects. Yet even those decisions have been greatly lamented by the judges who made them, and their soundness doubted. If, in addition to relieving the person of the debtor, you also exempt his property from seizure, the contract has become an empty name, of no efficacy to the holder, as he has not the

[In the Matter of the Settlement of Seal's Estate.]

means of enforcing its performance. When the parties enter into a contract, it is clearly implied that they shall have all the means which the laws then in force afford to compel its consummation, and that the creditor shall not by law be deprived of any portion of the security he has in the effects of his debtor. This, however, it is also understood, is not to interfere with the ordinary rights of an owner to part with his property, but the interference by the legislature is alone forbidden by the Constitution. If, at the time of making the contract, the creditor has a remedy by execution against the *whole* property of the debtor to compel its performance, the legislature cannot say that his remedy shall be confined to one-half or one-third of his effects. It even transcends the power of the States to so modify the remedy, as to require a sale for two-thirds of the appraised value (2 Howard, 608; 1 Howard, 311). For the contract to remain intact, the creditor must have all the means of enforcing its performance which existed when it was made. He must have the unrestrained means of selling all the property of his debtor which he then had; no part can be relieved from sale by State legislation, nor can the sale be clogged with conditions. If the legislature can say that three hundred dollars' worth of the debtor's effects shall be relieved from the payment of his debts, and be retained from his creditors, they can say that $3000 or the whole shall be thus leaving the contract a dead letter without beneficial vitality. I am aware of the *dictum* of Taney, C. J., in 1 Howard, 315, that the legislature " may, if it thinks proper, direct that the necessary implements of agriculture, the tools of the mechanic, or articles of necessity in household furniture shall not be liable to execution on judgments;" and that this same *dictum* is followed by Gibson, C. J., in Chadwick *v.* Moore (8 W. & S. 51), although he does not say whether he approves or disapproves of the principle. He admits that it affects the contracts, at least in an inconsiderable degree. If the declarations of Taney, C. J., had been the point of the case, they would have been binding upon every judicial tribunal throughout this broad Union in every case arising under the Constitution of the United States; but that question not only did not arise at that time, but the *dictum* was entirely *without* the case under consideration. It yields the whole constitutional principle, and permits the State legislatures to exempt any and all the property of the debtor from execution. The moment we concede that the legislature may judge of what articles are necessary for a man's convenience or comfort, or for that of his family, and declare that they shall not be taken to enforce performance of his contract, we are at sea without chart or compass. If the implements of agriculture are discharged, it must embrace not only the hoe, the plough, and the harrow, but the team; and as these are useless without the ground to cultivate, the farm can be exempted also. The shop is often as necessary

[In the Matter of the Settlement of Seal's Estate.]

to the mechanic as his tools. If the legislature can exempt the one, it can the other. If the necessities of one man's family or business demand the exemption of thirty dollars' worth of household effects, those of another may require to the amount of $300; and thus under the plea of necessity—the tyrant's plea, and in the name of humanity to the poor, the argument of the demagogue—the constitutional security of contracts be frittered away. Whilst you permit the poor debtor to retain property to the amount of $300, you may deprive the poorer creditor of the bread for his family, which is his just due by his contract guaranteed to him by the Constitution. It seems to be taken for granted that the debtor is poor and necessitous, and the creditor in better circumstances; but the reverse is very frequently the case. The creditor may not have the half of $300 to retain or leave for the use of his wife and children; and of a portion of that little he may be deprived by unjust legislation. It may appear presumptuous to thus reason on the opinion of one of the supreme judges of the United States on a great constitutional question; but we are not without precedent and authority for this course of reasoning. The Supreme Court of New York, in 1 Denio, 128, decided that their act of Assembly, declaring that the team of a person engaged in agriculture should be exempt from levy, was unconstitutional and void, so far as it related to debts previously contracted, and that the legislature possessed no power to create such exemptions. This case is full to the point now under consideration, and the decision was unanimously confirmed by the Court of Appeals, in 3 Denio, 594. The courts of Georgia have decided the same principle (1 R. M. Charlt. 324); where it is declared "that a law which prohibits a levy on a portion of a debtor's property previously subject to execution is unconstitutional."

Laws of the character now under consideration are subject to even greater objections than those which leave the property in the hands of the debtor. It might be reasoned as to such, that the object was beneficial rather than injurious to the creditor, as the debtor would thereby be eventually better able to pay; but these give away the effects forever to persons on whom the creditor has no claim. If the intention of this act of Assembly was to give away $300 worth of the debtor's property to his widow and children, to the exclusion of creditors existing prior to its passage, it is unconstitutional and void. Will the law bear that construction and no other? If it can be so interpreted as to bring it within the pale of the Constitution, respect for the legislature requires us so to construe it. The act of 1849, which exempts $300 worth of property from execution or distress, declares "that it shall not take effect until July 4th, 1849, and shall apply only to debts contracted after that date." The act of 1850 does not contain the necessary details for carrying its own provisions into

[In the Matter of the Settlement of Seal's Estate.]

effect, but refers to the act of 1849 for the *modus operandi*.  The appraisement is to be made according to that act.  It was only to come in play when the estate was "insufficient to pay the debts of the deceased, exclusive of the amount of property which is now by law exempted from levy and sale upon an execution against a debtor," and consequently can be considered as supplemental to the former act, part of one system, and may fairly be construed to apply to such debts as are or were contracted before July 4th, 1849.  Even the words in the proviso do not militate against this construction, as liens might be created against the real estate of the decedent between July 4th, 1849, and the passage of the act under consideration, which it was not intended should be brought against the land, unless they were for purchase-money.  If the debt was contracted after July 4th, 1849, the creditor could not complain that his rights were disregarded, for he knew at the time of making the contract that the debtor's property to the amount of $300 was absolved from its payment, and it could as well be left for the benefit of the widow and children as retained for himself; but it never was intended that the widow should retain where the husband could not.  This view is, in our opinion, rather strengthened than weakened by section 5 of the act of 14th of April, 1851, which clearly in terms provides for the retention of the same amount of property for the use of the same persons in all cases, whether the estate be insufficient to pay the debts "exclusive of the amount of property which is now by law exempted from levy and sale on execution against the debtor," or otherwise.  It is probable that the last-named act, which is general in its terms, must be construed to apply to all debts whenever contracted, and therefore will be declared unconstitutional by the courts, so far as it applies to debts contracted before July 4th, 1849; but it has no bearing on the present case, which arises entirely under the act of 1850, and is merely referred to as showing that the legislature considered the law of 1850 only applicable to debts contracted prior to July 4th, 1849.  The latter act differs from the earlier in no particular but the one alluded to, and in the provision that the family must be living with the decedent at the time of his demise, which is probably omitted in the last act by mistake, as we cannot believe the legislature intended to encourage the separation of families.  The time was when all of our laws were enacted with a careful regard to the rights of parties under their contracts, but the increasing disregard of the legislature to the constitutional injunction will oblige the judiciary to interpose their authority, and enforce the superior law of the land for the security of the citizen.  Therefore we hope that the validity of this kind of legislation may be tested at an early day before the Supreme Courts of the country.  No question has been raised in the present case as to the rights

[In the Matter of Poorman's Estate.]

of this widow and children to claim the property granted to them by former laws, nor have we any evidence that the decedent held such effects.   Therefore we forbear to enter into any examination as to whether these laws are or are not still in force as to cases not coming within the acts of 1850 and 1851.

The exception is sustained, and the administrator is ordered to account for the sum of $300 claimed by the widow and children.