## McCormick v. Rusch.

1. CONSTITUTIONAL LAW. A State Legislature may constitutionally enact a law which provides that, if it shall be shown to the satisfaction of the court that a defendant is in the actual military service of the United States, any action against him in the courts of such State shall stand continued during the period of his actual service.

2. SAME: GENERAL OPERATION. Such an act does not conflict with the provision of the State Constitution requiring "all laws of a general nature to have a uniform operation."

3. SAME: OBLIGATION OF CONTRACTS. Nor does it infringe § 10, art. 1, of the Federal Constitution, which prohibits any State from passing laws to impair the obligation of contracts.

*Appeal from Scott District Court.*

WEDNESDAY, OCTOBER 7.

THIS action was commenced in October, 1862. Defendant, by his attorney, made the proper showing that he was in the actual military service of the United States, and moved for a continuance. Plaintiff resisted the motion, upon the ground that the statute authorizing such continuance was unconstitutional, and also because no plea or answer had been filed. He also moved for judgment for want of plea. This motion was overruled and the continuance granted. Plaintiff appeals.

*S. E. Brown,* for the appellant, contended: 1. That the statute is unconstitutional in this, that it impairs the obligation of contracts, and is special legislation. *McCracken* v. *Hayward,* 2 How., 608; *Rosiers* v. *Hale,* 10 Iowa, 487. 2. That the act does not contemplate a continuance before issue is joined.

*H. R. & E. Claussen,* for the appellee, as to the first question presented in the argument of the counsel for the appellant, cited *Morse* v. *Goold,* 1 Kern., 281; *Holmes* v. *Lansing,* 3 John. C., 73; *Read* v. *Frankfort Bank,* 10 Shep. (Me.), 318.

WRIGHT, J. — I. We are satisfied that it was not necessary for the defendant to answer before obtaining the continuance. The statute is, "that in all actions now pending or hereafter brought in any of the courts of the State, * * it shall be a sufficient cause for a continuance, on motion of the defendant, his agent or attorney, if it shall be shown to the satisfaction of the court, * * * that the defendant is in the actual military service of the United States, or of this State, and upon such showing being made, said action shall stand continued during the actual continuance of said

defendant in the military service." (Laws of 1862, ch. 109, § 1.) The theory of the statute is, that such defendants are necessarily absent, engaged in the service of their country; that, while thus situated, they should not be called upon to defend suits and actions brought against them at home; and to compel them to plead or answer, before asking a continuance, would frequently defeat the very object and purpose of the statute. We need do no more than suggest that the advice and assistance of the party are frequently absolutely necessary to the proper preparation of the pleadings, and the law provides for such continuances as much on account of such known necessity as to give him an opportunity of being present at the final trial. To say that until he pleads it is not known that he has a defense, and that unless he has some defense there is no necessity for a continuance, substantially begs the whole question. It is because, among other things, he is not in position to present this pleading, that the law secures him the continuance. To hold that he shall not have the benefit of a law, because he fails to do that which the law itself presumes him incapable of doing, would make the statute inconsistent, and defeat the very object proposed by the Legislature.

II. Is the statute unconstitutional, and if so, upon what grounds?

To the suggestion that it conflicts with § 6, art. 1, of our State Constitution, which provides that "All laws of a general nature shall have a uniform operation," we give but little weight. The provision was not intended to cover or reach any such case. In the first place, it may be doubted whether it is a law of a "general nature" within the meaning of the Constitution. This conceded, however, why is not its operation uniform? It gives the same rule to all persons, placed in the same circumstances. It does not prescribe one rule for one citizen or soldier, and another for his neighbor, if they are in the same situation. We

have a statute regulating continuances on account of the absence of witnesses, which gives a uniform rule to all litigants. And yet one may be entitled to a continuance and another not. This results, not because a different rule is prescribed for each, but because one brings himself within its terms and the other does not. So all persons in the actual military service of the United States, or of this State, can claim the benefit of the statute, and any one can have the same benefit if in the service. Those that are not, are not entitled to the same advantage (so to speak), because, in the discretion and wisdom of the Legislature, it was deemed inexpedient. And yet this advantage may be, and is, extended to all upon the same terms. See *Dalby* v. *Wolff and Palmer*, 14 Iowa, 228, and cases there cited.

But does this law impair the obligation of contracts, and is it, therefore, in conflict with § 10, art. 1, of the Constitution of the United States?

The inquiry here presented has been most elaborately discussed by the ablest legal minds of the nation, and is yet invested with very great difficulty. This difficulty results not so much from any ambiguity in the language used as from a seeming effort to make it mean more or less than was intended. And each new case but adds to the complication, and confirms the conviction, that upon no fair or consistent principle can the decisions be reconciled.

The language under consideration is, "No State shall pass any law *impairing* the *obligation* of contracts." The pivotal words, as applied to the present case, are, "*impairing*" and "*obligation*," the latter being the most important. On discussing this question, we find the following among other definitions: Justice WASHINGTON, in *Ogden* v. *Saunders*, 12 Wheat., 318: "The *obligation* of a contract is the law which binds the parties to perform their agreement." Justice THOMPSON: "It is the law which creates the obligation, and whenever, therefore, the *lex loci* provides for the

dissolution of the contract in any prescribed mode, the parties are presumed to have acted subject to such contingency." Justice TRIMBLE: "It may be fairly concluded that the *obligation* of the contract consists in the power and efficacy of the *law* which applies to and enforces performance of a contract, or the payment of an equivalent for its non-performance. The *obligation* does not inhere and subsist in the contract itself, *proprio vigore*, but in the law applicable to the contract. This is the sense, I think, in which the Constitution uses the term *obligation*." Chief Justice MARSHALL: "*Obligation* and remedy, then, are not identical; they originate at and are derived from different sources. It would seem to follow that the law might act upon the remedy without acting on the obligation." In *Bronson* v. *Kinzie*, 1 How., 311, it is said that: "Whatever belongs to the remedy may be altered according to the will of the State, *provided the alteration does not impair the obligation of the contract*. But if that effect is produced, it is immaterial whether it is done by acting on the remedy or directly on the contract itself. In either case it is prohibited by the Constitution." And in *Sturges* v. *Crowninshield*, 4 Wheat., 122, it is said: "The distinction between the obligation of a contract, and the remedy given by the Legislature to enforce that obligation, has been taken at the bar, and exists in the nature of things. Without impairing the obligation of the contract, the remedy may certainly be modified as the wisdom of the nation shall direct."

Justice MCLEAN, in his dissenting opinion in *Bronson* v. *Kinzie, supra*, says: "The idea that the remedy attaches itself to the contract, so as to constitute a part of it, is too abstract for practical operations; every contract is entered into with a supposed knowledge, by the parties, that the law making power, may modify the remedy. And this it may do, at its discretion, so far as it acts only on the remedy."

Then in *Gantly's Lessees* v. *Ewing*, 3 How., 707, referring to the case *of Bronson* v. *Kinzie*, it is said to have been there held, "that the right and a remedy substantially in accordance with the right were equally parts of the contract secured by the laws of the State where it was made, and that a change of the laws, imposing conditions and restrictions on the mortgagee in the enforcement of his right, and which effected its substance, impaired the obligation, and could not prevail; as an act directly prohibited could not be done indirectly." Says DENIO, J., in *Morse* v. *Goold*, 11 N. Y., 286: "The most obvious method by which a contract may be impaired by legislation, would be the alteration of some of its terms or provisions, so that, assuming the validity of the law, the parties would be relieved from something which they had contracted to do, or would be obliged to do something, which the contract did not originally require. * * It is admitted that a contract may be virtually impaired by a law which, without acting directly upon its terms, destroys the remedy, or so embarrasses it that the rights of the creditor under the legal remedies, existing when the contract was made, are substantially defeated. With this qualification the jurisdiction of the States over the legal proceedings of their courts is supreme." And after citing and quoting from a number of authorities, he says they "are exemplifications of the principle, that legal remedies are in the fullest sense under the rightful control of the legislatures of the several States, notwithstanding the provision in the Federal Constitution, securing the inviolability of contracts; and that it is no valid objection on that subject, that the substituted remedy is less beneficial to the creditors than the one which obtained at the time the debt was contracted."

And it will be remembered that Chancellor KENT said in *Holmes* v. *Lanning*, 3 John. Cas., 75, that the provision in question was not violated, "so long as contracts were

submitted without legislative interference, to the *ordinary* and *regular* course of justice, and the existing remedies were preserved in substance and with integrity." In his Commentaries (I, 445, 446) he refers to the remarks of Chief Justice MARSHALL, in *Sturgis* v. *Crowninshield, supra*, and says they were general and latitudinary; "that, to lessen or take away from the extent and efficiency of the remedy to enforce the contract legally existing when the contract was made, impairs its value and obligation. And says COWEN, J., in *Butler* v. *Palmer*, 1 Hill, 324: "Were the question *res nova*, we might find great difficulty in distinguishing between the obligation of the contract, and a remedy given by the law to enforce it. It is difficult, under the notion that obligation and remedy are essential to each other, to see how the latter can be impaired without producing the same consequence to the other." "An unfortunate distinction," says SEDGWICK (Stat. and Const. Law, 133), "has been drawn by the highest Federal tribunals, between the obligation of a contract and its remedy. It has been repeatedly regretted, but the State courts have adopted it, and it is now too late, perhaps, to hope for its abandonment. What relates to the remedy is understood to be at the mercy of legislation, but the obligation of contracts is covered by the ægis of the federal charter."

We have quoted thus fully from some of the leading cases and textbooks, to show the sweeping language used; that after all they do not give us a practical line of demarkation in fixing the powers of State legislatures; and that in effect the whole subject is left open to legislative discretion, when acting upon a matter solely affecting the remedy, subject to the opinion of the courts, whether "the existing remedies were preserved in substance and with integrity," or as another case expresses it, whether "the remedy is destroyed or so embarrassed that the rights of the creditor under the legal remedies existing when the contract was

made, are substantially defeated." (11 N. Y., 276.) And they also show (with due deference be it said), "trials of logical skill," and in some instances "unnecessary speculations" upon a subject which is addressed, as Mr. STORY says, "to the common sense of the people" and the courts, and which becomes involved in difficulty in the proportion that we attempt to indulge "in metaphysical refinements."

Regrets have been indulged that a distinction should have been drawn by the Federal and other courts between the obligation of a contract and the remedy given to enforce it. The writer of this opinion may be permitted to express his regret that the distinction has not been more clearly kept up, and that anything was ever said confounding or connecting the one with the other. The argument of Justice McLEAN, in his dissenting opinion, in the case of *Bronson* v. *Kinzie,* 1 How., 311, is, in my opinion, unanswerable, and gives a construction to the language of the Constitution which is plain and intelligible, which any mind sophisticated or unsophisticated (to use the language of Mr. Dallas) can understand. Every mind and every case to be found recognizes a clear distinction between the obligation of a contract and the remedy. And to attempt to draw the dividing line and say that the Legislature may change some parts of remedial statutes and not others, or that some such changes affect the obligation, and are, therefore, invalid, while others do not, and are, therefore, valid, leads to confusion; leaves courts and the public in a wide field of uncertainty, without a reliable chart or compass, and necessarily involves the decisions of the several States in inconsistency, each court being left to determine, under the general and sweeping language of the leading cases, whether existing remedies have, by the new statute, been preserved in substance and with integrity. It seems to me that no one can refer to all the decisions made and reconcile them. We can all understand that the obligation meant by the

Constitution is legal and not moral; that it arises under civil laws; that it is the legally binding power of the contract, which renders the person liable to coercion or punishment for its violation. But is he to be coerced or punished under and by the law, according to the provisions of the statute existing at the time the obligation was entered into, and in no other way? Or may the Legislature, not relieving him from anything promised, nor imposing more than was originally required by the contract, change the remedy, without impairing the obligation? And if this may be done, where is the line? where does legislative powers cease and where may it be exercised? It is assumed that this may be done, for laws which do nothing more than change the remedy are not liable to constitutional objection, and although the new remedy may be deemed less convenient than the old one, and may, in some degree, render the recovery of debts more tardy and difficult, it will not follow that the law is unconstitutional. But then, in altering the remedy, the obligation of the contract must not be so impaired that the obligation and the rights of a party under it, may, in effect, be destroyed by denying a remedy altogether; or may be seriously impaired by burdening the proceedings with new conditions and restrictions, so as to make the remedy hardly worth pursuing. (TANEY, Ch. J., 1 How., 315.) Then, though the new statute may furnish a remedy less convenient than the old, and render the recovery of debts more tardy and difficult; yet if the remedy is not destroyed, or so burdened with new conditions and restrictions as to make it hardly worth pursuing, it does not violate the Constitution, and will be upheld. And yet, what language could leave the whole question in more doubt or uncertainty. It seems to me it would have been vastly more satisfactory to have recognized, broadly, clearly, and fully, a distinction between laws relating to the contract itself, and those relating to the

remedy, and abandoned the effort to occupy any middle ground; or, if this distinction was not deemed advisable, then adopt the principle of the New Jersey Constitution: "That the Legislature shall not deprive a party of any remedy for enforcing a contract which existed when the contract was made." Either rúle, to my mind, would have been much more convenient, practical and just, than that (if rule it can be called) adopted; and while I deem the reasoning of Justice McLEAN, above referred to, more in accordance with the Constitution, the rule which denies the right to interfere with any part of the remedy, is vastly preferable to any middle ground. It has, at least, the merit of practical certainty, and this, to me, as a judge, and, I think, to the public, is worth more than all effort to arrive at abstract theoretical perfection.

But for a moment let us refer to some of the cases, and see whether they bring us any nearer a certain practical rule upon this subject. As applied to existing contracts, it has been held that appraisement laws are invalid. 2 How., 608. Also, that a law, giving twelve months to redeem after a sale under a mortgage, was invalid, as applied to an instrument which contained a power to the creditor to sell and make his debt. 1 Id., 311. But the Legislature may pass a recording act, by which an elder grantee may be postponed to a younger, if the prior deed is not recorded within the limited term, whether the deed is dated before or after the passage of the act, thus rendering the prior deed fraudulent and void against a subsequent purchaser. *Jackson* v. *Lamphire*, 3 Pet., 280. And so it is competent for the Legislature to abolish imprisonment for debt, upon prior as well as future debts. This is well settled. *Wasson* v. *Haile*, 2 Wheat., 373; *Gray* v. *Monroe*, 1 McLean, 528; 4 Wheat., 288. In Michigan, a statute taking away the right of a mortgagee to maintain ejectment, before foreclosure, was held unconstitutional as to prior mortgages.

*Mundy* v. *Monroe*, 1 Mich., 68. But in Maine (10 Shep., 318), it is held, that a remedy for a party may be changed or wholly taken away by the Legislature. In California, a law allowing a redemption of property, enacted after the contract was made, was held invalid as applied to such contracts. (4 Cal., 128.) And yet, in Alabama (9 Ala., 713), a statute, giving two years to redeem from sale on execution under prior mortgages, was sustained. So in Pennsylvania, an act prohibiting a sale of property for less than two-thirds its appraised value, except after the expiration of a year, was held constitutional as to prior contracts. 8 W. & S., 49. Acts for the limitation of suits at law, especially when a reasonable time is allowed for commencing actions on existing demands, are not regarded as infringing upon the Constitution. 8 Mass., 429. And see a very strong case upon this subject in 9 How., 527, *State Bank* v. *Dalton*. In New York it has been held, that where the law conferred an extraordinary remedy upon particular creditors, a statute taking away such remedy, but leaving the ordinary means for the collection of the debt in full force, is not, though operating upon existing contracts, within the constitutional provision. *Stocking* v. *Hunt*, 3 Denio, 274. And a law exempting certain property from execution has been held to apply to prior debts. *Morse* v. *Goold*, 11 N. Y., 281. In this State it has been held, that laws granting exemption from execution affect the remedy, and that the exemption of a homestead is as much a part of the remedy as the exemption of a horse or other article of property. *Helfenstein & Gore* v. *Cave*, 3 Iowa, 287. It is manifest, however, that Mr. Sedgwick, in his work on Statutory and Constitutional Law, does not regard cases of the latter character as in harmony with the decisions of the Supreme Court of the United States, esteeming what is said on this subject in *Bronson* v. *Kinzie* as mere *obiter ;* (and see *Forsyth* v. *Mauhey*, R. M. Charlton, 324.) But the case of *Evans* v. *Mont-*

*gomery,* 4 W. & S., 218, goes quite as far, in holding that a statute was valid which so modified the mechanic's lien law as to give the purchaser no greater estate than was held by the person in possession, while, by the former law, it extended to the fee simple; (and see *Conkey* v. *Hart,* 4 Kern., 22.) We have found no case which holds that laws giving the right to a stay of execution upon certain terms would be invalid as applied to prior contracts, unless it be certain ones in Kentucky, which seem to be based upon the peculiar provisions of the statute. *Blair* v. *Williams,* 4 Litt., 34; *Pool* v. *Young,* 7 Mon., 587, and other cases there cited.

Mr. Sedgwick says that it is within the power of the Legislature to regulate the remedy and modes of proceeding in relation to past as well as future proceedings. And hence, subject to the general rules heretofore discussed, it is undoubtedly competent to prescribe new rules of evidence and judicial procedure (p. 659); and to the same effect see all the leading cases. The case of *Holloway* v. *Sherman,* 12 Iowa, 282, sustains the act of April 7, 1860, regulating the foreclosure of mortgages, and which enlarged the time given to a defendant to answer under the previous law. The former law entitled the plaintiff to a judgment at the term next after service, while this extended the time for answering after service for nine months. And upon the question here involved see *Rosier* v. *Hale,* 10 Id., 490; also, *Van Rensselaer* v. *Snyder,* 13 N. Y., 299.

The length of this opinion forbids that we should examine, critically, these several cases, and their bearing upon the cases now under discussion. But with what consistency it can be maintained that a law abolishing imprisonment for debt, or one exempting, it may be, a thousand or ten thousand dollars of the debtor's property, is valid, and that one providing that his property shall not be sold except under an appraisement, is invalid, we confess our inability to understand. If the one relates purely to the

remedy, the other does.  If one does not, neither does the other, except upon a theory which has its foundation in "visionary speculations" or "metaphysical refinements,"— speculations and refinements not warranted by the plain language of the Constitution.  The object upon which the remedy is to attach is substantially the same in both cases. In each case the right to the remedy is complete—the remedy itself, viz., action, judgment and execution, is alike unimpaired—but in the one case the object is entirely taken away, while in the other it is left, but has to be dealt with or disposed of in a manner different from that prescribed in the prior law.

But we cannot further follow the argument.  It only remains to apply what has been said to the case before us, and settle the rights of these parties.  The Legislature has said that a person in the military service of the United States or this State, shall be entitled to a continuance in all actions then pending or afterwards to be brought.  It certainly relates to the remedy, and the question is, does it take away all remedy upon this and similar contracts, or impose upon it such new burdens and restrictions as to materially impair its value and benefit.  For if it does not, then according even to the majority of those cases which have gone the furthest in connecting the remedy with the contract or its obligation, the act will be upheld.

In legislation of this character, very much must necessarily be left to the wisdom and discretion of the law making power.  And while our power to hold an act of the Legislature unconstitutional and void, is unhesitatingly admitted, and should, always, in a proper case, be fearlessly exercised, yet it is of the most delicate and responsible nature, and should not be resorted to unless the case be clear, decisive and unavoidable. *Santo* v. *The State of Iowa*, 2 Iowa, 208, and the cases there cited.  That such a case is before us we cannot believe.

The Act of 1861, ch. 7, which this amends, granted these continuances to those in the military service, if it appeared that their presence was in any degree necessary to a full and fair defense of the suit. And it was said in *Lucas* v. *Casady et al.*, 12 Iowa, 567, that we were disposed to give that act a liberal construction, in view of its design and purpose. If such continuances could properly be provided for and granted, if it appeared that the presence of the suitor was in any degree necessary for a full and fair defense, why may not the Legislature, in the exercise of a wise discretion, determine that the presence of all persons thus situated, is necessary, and if they ask it, they shall be entitled to a continuance of their suits?

But does this legislation do more than relate to the proceedings of courts? Suppose, in consequence of the public danger, and the great and absorbing interest felt in the national welfare, the legislature had postponed the terms of all courts for one or two years, or even more, would any judicial tribunal have been justified in holding a term in the meantime, and passing upon the rights of parties? If so, when, where, and by what authority? Or suppose it had been provided that in all actions upon promissory notes against these volunteers, their signatures should be established by at least two competent witnesses, whereas in ordinary cases, no proof of signature whatever was necessary, unless the same was denied under oath? Aside from a possible objection that such a law did not have a uniform operation, and was, therefore, invalid, no possible argument could have been made against it, for the right to prescribe new rules of evidence so that the validity of the proof on which the claim is founded is not destroyed, is not denied in any of the authorities.

But this act only gives a new rule of judicial procedure in that it extends the time for pleading. The obligation of the contract itself remains in all its integrity. The

party is delayed in the enforcement of his right, but all remedy is not taken away. How far the value or benefit of the remedy may be impaired, (and especially materially) by what are termed the new burdens or restrictions imposed by the act, we cannot know in this or any other particular case. Nor is this the true inquiry. At most, the proper inquiry is whether, as a rule, this law as applied to all cases coming within its terms, so far affects the value and benefit of the remedy to which parties were previously entitled as to impair the obligation of their contracts. And satisfied that the Legislature has not so far exceeded its power in this respect as to justify our interference, we shall sustain the law and affirm the judgment of the Court below.

Affirmed.