## Moyer et al., Executors, v. J. Miller Kalbach Company

*George B. Balmer,* for petitioner.

*Jonathan P. Batdorf* and *Luther H. Heist,* contra.

SCHAEFFER, P. J., February 7, 1934.—This matter is before us upon the petition of Wellington M. Bertolet, conservator of Farmers National Bank & Trust Company of Reading. In pursuance of the petition, a rule was granted upon the executors of the estate of George Moyer, deceased, to show cause why a writ of execution issued by them upon a judgment obtained upon a mortgage should not be stayed.

J. Miller Kalbach Co., Inc., was the owner of a garage and apartment building known as No. 124 South Fifth Street, Reading, Pa., upon which there is a first mortgage of $100,000, given to George Moyer, now deceased, a second mortgage of $25,000, now held by Lloyd Schlegel, and a third mortgage of $75,000, given to Farmers National Bank & Trust Company to secure certain notes and credits due the bank. Title to the property is now in J. Stanley Giles, trustee for creditors of the Kalbach Company.

The trustee has been managing the property for several years. His accounts disclose that for the year 1932 there was a net operating loss of almost $9,000. In 1933, however, he was able to rent the first two floors and to reduce the expenses, so that there is now a surplus of income over taxes and maintenance expenses of about $3,600 per annum, which could be applied to the payment of interest upon the first mortgage. There are now two showrooms still unrented; but not even the petitioner claims that the income from the showrooms, if they

should be rented, would, together with the above surplus, be sufficient to pay the full annual interest upon the first mortgage. Taxes for 1933, amounting to over $3,200, are unpaid. There is now due $7,500 interest upon the first mortgage; that is, no interest has been paid upon any mortgage since January 1, 1933. There is a claim of $1,200 by the Commonwealth for corporation taxes due by the Kalbach Company. The plaintiffs assert that the total sum of $112,200 is presently due upon the first mortgage, in addition to accrued taxes and interest for 1934.

The plaintiffs have issued execution, and the property is advertised for sale on February 10, 1934.

The petitioner bases his application for a stay upon the allegation that a sale of the premises, by virtue of plaintiffs' writ of execution, would make worthless petitioner's claim against L. Miller Kalbach Co., Inc., for the reason that no bid sufficient to pay anything beyond the first mortgage can be expected at this time. Upon hearing held upon the petition and answer, the trustee, who is the owner of property in the vicinity of the premises in question, stated that, in his opinion, the premises could be sold in a short time at more than $90,000 after a revival of industrial activity. Plaintiffs, on the other hand, called two competent and reliable real estate experts, who testified that the present fair market value of the property was somewhere between $90,000 and $100,000. One of them stated that, upon a rental income basis, the value of the property was about $40,000 and doubted whether the property would earn a sufficient sum in the next 5 years to warrant paying $90,000 for it.

The attorney for the petitioner stated at the hearing that they would not recommend the investment of $90,000 of depositors' money for the purchase of the first mortgage.

The mortgage in question is a large part of the estate of George Moyer, deceased. His will contains specific bequests of about $120,000, among which are two annuities for two old people of $30 per week. The executors have made a partial distribution of the estate and have procured the assent of the legatees to sell the premises in question, if they shall purchase them at sheriff's sale, to A. W. Golden, for the sum of $90,000.

After due consideration, we cannot conclude from the facts and circumstances that we are justified in staying this sale. The petitioner, in the exercise of sound judgment, has concluded that he cannot recommend the assumption of plaintiffs' mortgage by the institution which he represents. A continuance of the present status would be at the risk of the plaintiffs. There can be no guaranty that the property will command a greater price in the future than it will at present. Although we all personally hope and believe that economic conditions and real estate values will improve, we are not warranted in speculating with the estate's assets upon that assumption.

There is the further grave question of the authority of the court to stay a sale of the premises in question. The premises are not such as are embraced within the provisions of the Act of May 18, 1933, P. L. 826; they are neither a dwelling house nor a farm occupied by the owner. Our attention has not been called to any decided case in which even during an economic emergency the court has by its own power stayed a sale such as this. In Chadwick v. Moore, 8 W. & S. 49, the stay was in pursuance of the provisions of the Act of July 16, 1842, P. L. 407.

And now, to wit, February 7, 1934, the rule is discharged.

From Charles K. Derr, Reading, Pa.