Argued October 8, reversed October 20, 1914.

## ALTSCHUL *v.* STATE.

(144 Pac. 124.)

**Statutes—Special Laws—Suit Against State.**

1. Laws of 1913, Chapter 346, granting leave to a person named to institute suit against the state to determine the interest of the state in certain lands, is a special law, violative of Article IV, Section 24, of the Constitution, authorizing provision by general law for suit against the state, but forbidding any special act authorizing such suit.

[As to what is special legislation as forbidden by the Constitution, see note in 21 Am. St. Rep. 780.]

**Constitutional Law—States—Privileges and Immunities of Citizens—Suit Against State.**

2. Laws of 1913, Chapter 346, giving leave to a person named to institute suit against the state to determine the interest of the state in certain lands, grants a privilege not granted to any other citizen, in violation of Article I, Section 20, of the Constitution, forbidding any law granting to any citizen privileges or immunities which, upon the same terms, shall not belong to all citizens.

[As to actions against states, see note in 12 Am. Dec. 517.]

**Statutes—Special Laws—Court Practice.**

3. Laws of 1913, Chapter 346, granting leave to a person named to institute suit in Multnomah County against the state to determine the interest of the state in lands located in Linn and Crook counties, while Section 396, L. O. L., requires suits in equity for determination of an adverse interest in real property to be commenced and tried in the county where the subject of the suit, or some part thereof, is situated, is violative of Article IV, Section 23, of the Constitution, forbidding any special laws regulating the practice in courts of justice, or providing for changing the venue in civil cases.

**States—Actions Against.**

4. Section 516, L. O. L., provides that any person claiming an interest in real estate not in the actual possession of another may sue one claiming interest adverse to him to determine such conflicting claims. Section 729 authorizes courts to take judicial notice of official acts of the legislative departments of the state and the United States. Act of July 5, 1866, Chapter 174 (14 Stat. 89), grants certain lands to the State of Oregon in aid of the construction of a military road. Laws of 1866, pages 58, 60, grants such lands to plaintiff's predecessor in interest. *Held*, that though the patent to the land in question named as the grantee the State of Oregon for the use and benefit of the plaintiff's predecessor, the state is claiming no interest which would authorize the maintenance of the suit.

From Multnomah: HENRY E. McGINN, Judge.

Department 2.    Statement by MR. JUSTICE BURNETT.

This is a suit by Charles Altschul against the state of Oregon, to determine an adverse claim to real property. The Circuit Court overruled a general demurrer to the complaint, and as the defendant declined to plead further, entered a final decree according to the prayer of the complaint, to the effect that the state has no beneficial interest in the lands in question, requiring the state land board to convey to the plaintiff all the state's right, title, interest and estate in the premises, with the condition that in the event such conveyance should not be executed the decree should stand in place thereof, and finally enjoined the state from asserting any claim to the premises adverse to the plaintiff. From this decree the defendant has appealed.

REVERSED AND SUIT DISMISSED.

For the State of Oregon, there was a brief over the names of *Mr. Andrew M. Crawford,* Attorney General, and *Mr. James W. Crawford,* Assistant Attorney General, with an oral argument by *Mr. James W. Crawford.*

For respondent there was a brief with oral arguments by *Mr. Charles E. S. Wood* and *Mr. Walter Asher.*

MR. JUSTICE BURNETT delivered the opinion of the court.

By Act of Cong. July 5, 1866, Chapter 174, found in 14 U. S. Stats. at Large, page 89, it was enacted:

"That there be, and hereby is, granted to the State of Oregon, to aid in the construction of a military wagon road from Albany, Oregon, by way of Canyon City, and the most feasible pass in Cascade Range of mountains, to the eastern boundary of the state alternate sections of public lands, designated by odd numbers, three sections per mile to be selected within six miles of said road."

In section 2 of that enactment it is stated:

"That the said lands hereby granted to said state shall be disposed of by the legislature thereof for the purpose aforesaid, and for no other."

By the Act of October 24, 1866 (Laws 1866, pp. 58, 60), the legislative assembly of the State of Oregon recited in full the act of Congress to which allusion has been made, and proceeded to enact the following:

"That there is hereby granted to the Willamette Valley and Cascade Mountain Wagon Road Company, all lands, right of way, rights, privileges and immunities heretofore granted or pledged to this state by the act of Congress, in this act heretofore recited, for the purpose of aiding said company in constructing the road

72 Or.—38

mentioned and described in said act of Congress, upon the conditions and limitations therein prescribed. There is also hereby granted and pledged to said company all moneys, lands, rights, privileges and immunities which may be hereafter granted to this state to aid in the construction of such road for the purposes and upon the conditions and limitations mentioned in said act of Congress, or which may be mentioned in any further grants of money or lands to aid in constructing such road.''

Still further, by Act of June 18, 1874, Chapter 308, found in Part 3, 18 U. S. Stats. at Large, page 80, Congress declaring by preamble that certain lands had been granted to the State of Oregon to aid in the construction of military wagon roads in said state, and that there existed no law providing for the issuing of formal patents for said lands, enacted:

''That in all cases when the roads in aid of the construction of which said lands were granted are shown by the certificate of the Governor of the State of Oregon, as in said acts provided, to have been constructed and completed, patents for said lands shall issue in due form to the State of Oregon as fast as the same shall, under said grants, be selected and certified, unless the State of Oregon shall by public act have transferred its interests in said lands to any corporation or corporations, in which case the patents shall issue from the General Land Office to such corporation or corporations upon their payment of the necessary expenses thereof.''

The complaint avers, in substance, that the plaintiff is the successor in interest of the grantee of the state under the act of October 24, 1866; that in compliance with and in fulfillment of the provisions of the grant the United States government had issued 23 patents conveying, as the realty comprising said grant, a large

amount of land; that all except the first of these patents were issued direct to the grantee of the state under the act mentioned, but that by some clerical error the first one was issued to the State of Oregon for the use and benefit of the "Willamette Valley and Cascade Mountain Military Road Company of said state and its assigns." Under this condition of affairs the legislative assembly of the State of Oregon passed the act of February 28, 1913, which in a lengthy preamble narrated the history of the lands substantially as here set down, and enacted a law as follows:

"Leave is hereby given to Charles Altschul, his heirs, personal representatives, successors in interest or assigns, to institute and prosecute to conclusion a suit in equity against the State of Oregon, to determine the interest of said state in the lands covered by and described in said patent of the United States to the State of Oregon, dated June 19, 1876, and executed under the great seal of the United States by the President, U. S. Grant, by D. D. Cone, Secretary. Such suit shall be instituted in the Circuit Court of the State of Oregon for the County of Multnomah; and such parties may be joined therein and such issues of law and of fact raised and adjudicated as may be necessary for a complete determination of the title of said Charles Altschul to the lands included in said grant, or any of them. Service of summons in such suit shall be made upon the Governor or the Secretary of State, of the State of Oregon; and the Attorney General of said state shall appear and defend such suit; provided, however, that the plaintiff in such suit shall pay all the costs and disbursements of such suit, and no costs or disbursements shall be taxed against the State of Oregon, or any other party to such suit, except the plaintiff": Laws 1913, c. 346, p. 696.

The principal question raised by the demurrer to the complaint is the constitutionality of this statute. Arti-

cle IV, Section 24, of the Constitution of the state reads thus:

"Provision may be made by general law for bringing suit against the state, as to all liabilities originating after or existing at the time of the adoption of this Constitution; but no special act authorizing such suit to be brought or making compensation to any person claiming damages against the state, shall ever be passed."

Article. I, Section 20, of the same instrument reads thus:

"No law shall be passed granting to any citizen or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens."

Again, it is said in Article IV, Section 23:

"The legislative assembly shall not pass special or local laws in any of the following enumerated cases, that is to say— * * 3. Regulating the practice in courts of justice; 4. Providing for changing the venue in civil and criminal cases. * * "

1, 2. It was contended at the hearing that there was no liability as against the state within the meaning of Article IV, Section 24; but this admits the plaintiff's case out of court, for if there is no liability there can be no suit. The law is plainly a special law, for it relates only to a single cause of complaint, if such a cause may be said to exist at all. Moreover, it grants to the plaintiff here a privilege which is not extended to any other person in the state, and hence is in conflict with Article I, Section 20.

3. It is said in Section 396, L. O. L.:

"Suits in equity in the following cases shall be commenced and tried in the county where the subject of the suit, or some part thereof, is situate:— * * 3. For the determination of an adverse claim, estate, or in-

terest in real property, or the specific performance of an agreement in relation thereto.''

The property in question is situated in Linn and Crook counties of this state. In requiring the suit to be brought in Multnomah County, the act plainly violates the provisions of Article IV, Section 23, above quoted, for it affects the practice in courts of justice by means of a special law, and likewise provides specially for changing the venue of this particular suit, which, if it could be maintained at all, should under the general law have been commenced in the county where the realty in question is situated. The act authorizing this particular suit to be brought is in plain conflict with the fundamental law on the subject involved. No authority existed for commencing it, and the court was without jurisdiction of the person of the defendant.

4. Still further, it is laid down as the rule in Section 516, L. O. L., that: ``

''Any person claiming an interest or estate in real estate not in the actual possession of another may maintain a suit in equity against another who claims an interest or estate therein adverse to him, for the purpose of determining such conflicting or adverse claims, interests, or estates.''

Taking judicial notice, as we must under Section 729, L. O. L., of ''the public and private official acts of the legislative, executive and judicial departments of this state and of the United States,'' we know as a matter of law that the United States granted the lands in question to the State of Oregon which in turn granted them to the plaintiff's predecessor in interest, covering by the terms of the act of October 24, 1866, not only all lands granted to the state by the act of Congress prior to that time, but also ''all moneys, lands, rights, privi-

leges and immunities which may hereafter be granted to this state to aid in the construction of such road.'' This statute carried with the grant whatever after-acquired title anyone could claim inured to the State of Oregon by the first United States patent mentioned above. So it is that, by the laws of the United States and of this state all the title that could be granted to anyone was granted to the plaintiff's predecessor in interest. It is idle to contend that the clerical error of some heedless and incompetent scrivener in the General Land Office who wrote the patent in question should overcome or cast doubt upon the laws of the land. In the terms of the statute, a suit to determine an adverse claim to real estate must be brought against one ''who claims an interest or estate therein adverse'' to the plaintiff. Here, it indisputably appears by the complaint that the state has already conveyed to the plaintiff's predecessors in title all the estate or title which it could convey, and that it is not claiming or asserting any interest in the property adverse to the plaintiff. It is not alleged or pretended that the State of Oregon is claiming any such interest or estate in the land. It is only against one thus claiming adversely to plaintiff that he could maintain this suit.

For all these reasons the demurrer to the complaint should have been sustained. The decree is reversed and the suit is dismissed.

REVERSED and SUIT DISMISSED.

MR. CHIEF JUSTICE McBRIDE, MR. JUSTICE EAKIN and MR. JUSTICE McNARY concur.