Argued and submitted December 3, 1980, affirmed June 23, petition for rehearing denied July 28, 1981

## STATE OF OREGON,
*Respondent,*

*v.*

## ANDREW CLARK,
*Petitioner.*

## (TC 35188, CA 15862, SC 27251)

630 P2d 810

Robert J. McCrea, of Morrow, McCrea & Divita, P.C., Eugene, argued the cause and filed a brief for petitioner.

John C. Bradley, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James M. Brown, Attorney General, and Walter L. Barrie, Solicitor General.

Before Denecke, Chief Justice, and Tongue, Lent, Linde, Peterson and Campbell, Justices.

LINDE, J.

Tongue, J., specially concurred.

## LINDE, J.

■ Defendant was convicted of theft in the second degree. On appeal, he assigned as error the trial court's denial of two pretrial motions to dismiss the indictment on constitutional grounds. One of these motions claimed that defendant was denied equal protection of the law because he was prosecuted and potential codefendants were given immunity without reference to any standards for the disparate treatment, and because he could not obtain the testimony of witnesses by granting them immunity from the use of their testimony against themselves, as the state may do or assist other defendants to do. The second motion to dismiss the indictment claimed that the failure to accord defendant a preliminary hearing after his indictment denied him due process and equal protection of the law under a number of state and federal constitutional provisions.[1] The Court of Appeals rejected these constitutional claims, 47 Or App 389, 615 P2d 1043 (1980), and we allowed review. We affirm the conviction.

### I. Denial of a preliminary hearing.

Oregon law provides for charging a person with a felony either by grand jury indictment or by a district attorney's information. Article VII (amended), section 5, of the Oregon Constitution permits a district attorney to charge a person on an information filed in

---

[1] Defendant relies primarily on Or Const Art I, § 20, and on the provisions of U S Const amend 14, § 1, that "[n]o state shall. . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." The singular "law" is used in defendant's equal protection argument, which refers collectively both to the state and the federal provision. Defendant cited Or Const art I, §§ 10 and 11, and the federal sixth amendment as "fundamental" rights which were not made "equally" available to him. He did not explain his citation of Or Const Art I, §§ 15 and 16. *Cf. Sterling v. Cupp,* 290 Or 611, 625 P2d 123 (1981), note 1 and cases there cited, *Megdal v. Board of Dental Examiners,* 288 Or 293, 296, 605 P2d 273 (1980).

The concurring opinion asserts that defendant abandoned his reliance on Or Const Art I, § 20, on appeal, though it was a basis of his motion in the trial court. Defendant's principal argument, however, was predicated on *Hawkins v. Superior Court,* 22 Cal3d 584, 586 P2d 916 (1978), a decision based entirely on state rather than federal grounds. In any event, he could not have excluded issues of state law by pitching his attack on 14th amendment grounds. *Cf. State v. Spada,* 286 Or 305 (1979). The case was argued together with *State v. Edmonson,* also decided today, which presented the same issue of equal rights, based in part on Art I, § 20, and there can be no claim that examination of that issue under the Oregon Constitution before the 14th amendment took respondent by surprise.

circuit court only after a showing of probable cause in a preliminary hearing before a magistrate, unless the person waives indictment or waives the preliminary hearing.[2] At the preliminary hearing a panoply of procedural guarantees protect the person's right to contest the evidence of probable cause that he has committed a felony and his right not to become a witness against himself.[3] These include the right to the aid of counsel, ORS 135.070, 135.075; the right to subpoena witnesses, ORS 135.085; cross-examination of adverse witnesses, ORS 135.090; the right to make an unsworn statement subject only to limited questioning by the magistrate, ORS 135.095, 135.100; and ultimately, the right to the judgment of a trained judicial officer whether probable cause for the prosecution has been shown, based on evidence which the person to be charged could challenge or meet by opposing evidence or by his own statement, if he chose to do so. ORS 135.175, 135.185.

No comparable procedural rights are accorded a person charged before a grand jury. To the contrary, the statutes provide that only the prosecutor and a witness actually under examination shall be present during grand jury sittings, unless a court orders the presence of a reporter of testimony or other necessary attendants, ORS 132.090; the grand jury need not hear any evidence for the defendant, ORS 132.320(4); and it may find an indictment upon the apparent strength of prosecution evidence "if unexplained or uncontradicted," although the defendant had no opportunity to test, explain, or contradict the evidence. ORS 132.390.

----

[2] Or Const Art VII (amended) § 5:

"(4) The district attorney may charge a person on an information filed in circuit court of a crime punishable as a felony if the person appears before the judge of the circuit court and knowingly waives indictment.

"(5) The district attorney may charge a person on an information filed in circuit court if, after a preliminary hearing before a magistrate, the person has been held to answer upon a showing of probable cause that a crime punishable as a felony has been committed and that the person has committed it, or if the person knowingly waives preliminary hearing."

[3] These procedures are spelled out in statutes; the constitution itself does not define "preliminary hearing." ORS 135.070 - 135.185. The statutes use the male pronoun collectively for either gender.

■ Unquestionably the procedures afforded in a preliminary hearing are potentially important to an accused, whether or not they are advantageous in a particular instance. In theory, at least, the preliminary hearing is designed to make it possible for an accused to avoid defending against an unjustified charge, even if more often it only permits him to learn something of the prosecution's case against him that would be hidden in grand jury secrecy. *Cf.* ORS 135.855(1)(c); *State ex rel Johnson v. Roth,* 276 Or 883, 557 P2d 230 (1976); *compare State v. Hartfield,* 290 Or 583, 624 P2d 588 (1981). In his original motion, defendant included a reference to "due process," presumably intending to invoke that clause of the federal fourteenth amendment.[4] Grand jury indictment itself can hardly be argued to contravene due process, being included in the same fifth amendment by which "due process" entered constitutional law, and defendant offers no support or serious argument for the proposition that the evolution of due process now requires an opportunity to contest the factual basis of an indictment in a pretrial judicial hearing. Defendant's chief claim, however, is not that an opportunity to discover the prosecution's case or to contest it before trial is constitutionally mandated, but rather that a law which does provide such an opportunity must be applied according to constitutional standards, including the constitutional standards of equality. That much, of course, is true.[5] We therefore turn to those constitutional standards.

*Article I, section 20.* Defendant does not spell out the distinct premises of his "equal protection" attack, relying only on the decision of the Supreme Court of

[4] *Supra,* n. 1. As a constitutional premise, the phrase "due process" must refer to this federal clause and must be supported by interpretations of the clause in decisions of the United States Supreme Court or of other courts based on such decisions, since the phrase does not appear in the Oregon Constitution. *See Megdal v. Board of Dental Examiners, supra,* n. 1. It will avoid needless confusion if "due process" is not used to refer generically to whatever procedures may be required by other sources or state or federal law. No such other sources are quoted or argued in this case.

[5] The fact that a procedure, a power, or a program is itself stated in the constitution, as are the provisions for indictment and information, does not relieve them from compliance with other constitutional standards unless these are expressly excluded. There are many such provisions placed in the Oregon Constitution (e.g. sale of alcoholic liquor, Art I, § 39, educational funding, art VIII, §§ 2-5, and the bonding authorities of Article XI-A through H) that are not thereby placed beyond the guarantees in Article I, the Bill of Rights.

California in *Hawkins v. Superior Court,* 22 Cal3d 584, 586 P2d 916 (1978). The *Hawkins* decision held that indicted defendants must be afforded preliminary hearings equally with defendants charged by an information in order to meet the equality guarantee of California's constitution.[6] Before turning to the *Hawkins* court's analysis, therefore, it is necessary to review the comparable Oregon guarantee.

Article I, section 20 provides:

"No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens."

This guarantee, taken like most of Article I from Indiana's Constitution of 1851, has been a part of the Bill of Rights since Oregon became a state in 1859. Antedating the Civil War and the equal protection clause of the fourteenth amendment, its language reflects early egalitarian objections to favoritism and special privileges for a few rather than the concern of the Reconstruction Congress about discrimination against disfavored individuals or groups.[7] *See City of Klamath Falls v. Winters,* 289 Or 757, 619 P2d 217 (1980), *quoting State ex rel Reed v. Schwab,* 287 Or 411, 417, 600 P2d 387 (1979).[8] The original concern of Article I, section 20, with special privileges or "monopolies" was the basis of early decisions concerning the licensing of sailors' boarding houses, *White v. Holman,* 44 Or 180, 74 P 933

---

[6] California Const Art I, § 7.

"(a) A person may not be deprived of life, liberty, or property without due process of law or denied equal protection of the laws.

"(b) A citizen or class of citizens may not be granted privileges or immunities not granted on the same terms to all citizens. Privileges or immunities granted by the Legislature may be altered or revoked."

Like the California court, we scrutinize the challenged action under the Oregon Constitution before the fourteenth amendment. *See Sterling v. Cupp,* 290 Or 611, 613-614 and notes 1, 2, 625 P2d 123 (1981).

[7] Ind Const Art I, § 23 (1851). Its direct predecessors were Iowa Const Art I, § 6 (1846), Mich Const Art I, § 3 (1835), Tenn Const art XI, § 7 (1834). The original state declarations of rights had proscribed, more narrowly, "exclusive or separate emoluments or privileges from the community, but in consideration of public services," Va Decl of Rights § 4 (1776) (similarly Mass Decl of Rights § VI (1780)), repeated in many state constitutions. *Compare,* as to the equal protection clause, Frank & Munro, *The Original Understanding of "Equal Protection of the Laws,"* 1972 Wash U L Q 421 (1972).

[8] The quotation, taken from *State v. Savage,* 96 Or 53, 59, 184 P 567 (1919), 189 P 427 (1920), reads:

(1904), or fishing rights, *e.g. Monroe v. Withycombe,* 84 Or 328, 165 P 227 (1917). Because the clause would ordinarily be invoked by persons who wanted a privilege or immunity for themselves rather than to withdraw it from others, its protective effect was soon held to extend to rights against adverse discrimination as well as against favoritism. *See, e.g., State v. Wright,* 53 Or 344, 100 P 296 (1909) (reversing a conviction for unlicensed peddling because peddlers of other goods did not require licenses), and its use against discriminatory or otherwise "unequal" adverse treatment is long established. *See City of Klamath Falls v. Winters, supra,* and cases cited at 289 Or 765-767.

██ ██ More important to the present case is the dual test of the proscribed kinds of discrimination or unequal treatment. The clause forbids inequality of privileges or immunities not available "upon the same terms," first, to any citizen, and second, to any class of citizens. In other words, it may be invoked by an individual who demands equality of treatment with other individuals as well as by one who demands equal privileges or immunities for a class to which he or she belongs. Because constitutional attacks under Article I, section 20 mostly have been directed at laws prescribing general rules for one or another class of subjects, these attacks, as well as most judicial opinions, have been phrased in the rhetoric of forbidden "classification," but that is only one of two distinct grounds of attack. A classic example of the other, individual, basis is *Altschul v. State,* 72 Or 591, 144 P 124 (1914), which invalidated a law permitting a named person to sue the state.

This dual coverage of Article I, section 20, was recognized in the first case under the section, *In re Oberg,* 21 Or 406, 28 P 130 (1891). A constable convicted of arresting a sailor on board a vessel as an absconding

---

"The provisions of the state Constitution are the antithesis of the fourteenth amendment in that they prevent the enlargement of the rights of some in discrimination against the rights of others, while the fourteenth amendment prevents the curtailment of rights. . . . "

289 Or at 774-775. Theoretically the converse perspectives of the two clauses could bear on whether a forbidden differentiation should be resolved by depriving the favored class of its unequal benefits under Article I, section 20, or by extending the benefits to those who were "denied equal protection," but such a choice is not involved in this case.

debtor, contrary to a law prohibiting such arrests, claimed that the law was unconstitutional as a special immunity for seamen. In rejecting his claim, this court said:

> "All sailors of a seagoing vessel within the prescribed limits are treated alike, and entitled to enjoy the privileges or immunities granted. The act prescribes the same rule of exemption to all persons placed in the same circumstances. It does not grant to a sailor immunity from arrest for debt, and refuse it to his neighbor, if they be similarly situated. The same privilege or immunity is extended by the act to all in the same situation. Any person who is a sailor may enjoy the immunity, and any citizen desiring such immunity may have it in the words of the constitution, 'upon the same terms,' by becoming a sailor. While one may enjoy the benefit of the exemption, and another may not, this results not because the statute favors one, and discriminates against another, but because one brings himself within its terms, and the other does not."

21 Or at 408. The court quoted the Iowa court, stating of a comparable statute in *McCormick v. Rusch,* 15 Iowa 127, 129 (1863):

> "It does not prescribe one rule for one citizen or soldier, and another for his neighbor, if they be in the same situation. We have a statute regulating continuances on account of the absence of witnesses, which gives a uniform rule to all litigants. And yet one may be entitled to a continuance and another not. This results, not because a different rule is prescribed for each, but because one brings himself within its terms and the other does not.... "

*Id.* And the *Oberg* court continued with quotations to the same effect from Tennessee[9] and the following from the United States Supreme Court:

> "The discriminations which are open to objection are those where persons engaged in the same business are subject to different restrictions, or are held entitled to different privileges under the same conditions. It is only

---

[9] "[T]his clause of the constitution only prohibits the suspension of a general law or the grant of privileges, immunities or exemptions to an individual or individuals. It does not prohibit legislation for the benefit of classes composed of any members of the community who may bring themselves within the class."

*Davis v. State,* 71 Tenn 376, 379 (1879), *quoted at* 21 Or 409.

then that the discrimination can be said to impair that equal right which all can claim in the enforcement of the laws. *(Soon Hing v. Crowley,* 113 U. S. 709.)"

21 Or at 411.

██ It has thus been clear from the earliest judicial discussion of Article I, section 20, that this section is a guarantee against unjustified denial of equal privileges or immunities to individual citizens at least as much as against unjustified differentiation among classes of citizens. It also was early established that the guarantee reaches forbidden inequality in the administration of laws under delegated authority as well as in legislative enactments. *White v. Holman, supra,* held that a board of commissioners had violated Article I, section 20, in denying petitioners a license to maintain a sailors' boarding house because the board had not used objective standards for selecting qualified licensees but rather had followed the recommendations of shipowners that the business be limited to another firm's boarding house. Similarly, in *Monroe v. Withycombe, supra,* this court said that if the legislature could not itself directly authorize exclusive fishing rights for some persons, it could not authorize a master fish warden to do so indirectly. 84 Or at 336. And in *State v. Cory,* 204 Or 235, 282 P2d 1054 (1955), the court recognized a violation of Article I, section 20 as well as the fourteenth amendment *in the wholly standardless administra-tion*, with "no yardstick or semblance of classification," of discretion given district attorneys under a habitual criminal act. 204 Or at 240.

██ ██ One branch of Article I, section 20, and decisions under it thus call for analysis whether the government has made or applied a law so as to grant or deny privileges or immunities *to an individual person* without legitimate reasons related to that person's individual situation. More frequent cases have involved attacks on statutes under the branch of the guarantee that forbids laws granting or denying a privilege or immunity to a class of citizens. The two are sometimes interrelated, for when wholly standard-less application of a general law to individual cases is

avoided by formal or informal criteria, these criteria in turn must pass muster under "classification" analysis.[10]

That mode of analysis has notorious difficulties, which this court has not escaped.[11] As *Hawkins v. Superior Court, supra,* on which defendant relies, used this approach, we deal with it here. Without reviewing the course of this court's decisions, a few fundamental points suffice for the purposes of the present case.

■ The terms "class" and "classification" are invoked sometimes to mean whatever distinction is created by the challenged law itself and sometimes to refer to a law's disparate treatment of persons or groups by virtue of characteristics which they have apart from the law in question. Familiar examples of the latter kind of "class" are personal characteristics such as sex, ethnic background, legitimacy, past or present residency or military service. On the other hand, every law itself can be said to "classify" what it covers from what it excludes. For instance, the rule of this court that limits the time for filing a petition for review (Rule 10.05) "classifies" persons by offering the "privilege" of review to those who file within 30 days and denying it to those who file later. Similarly, a law that licenses opticians and optometrists to perform different functions, *see Williamson v. Lee Optical,* 348 US 483, 75 S Ct 461, 99 L Ed 2d 563 (1955), does not grant or deny privileges to classes of persons whose characteristics are those of "opticians" and "optometrists"; rather, the law creates these classes by the licensing scheme itself. Attacks on such laws as "class legislation" therefore tend to be circular and, as the above quotations from early decisions show, have generally been rejected whenever the law leaves it open to anyone to bring himself or herself within

---

[10] In such cases, however, the constitutional issue normally would be avoided by interpreting the law in a manner consistent with the constitutional guarantee. *See State v. Smyth,* 286 Or 293, 296, 593 P2d 1166 (1979); *Oregon Medical Association v. Rawls,* 281 Or 293, 300, 574 P2d 1103 (1978), and cases there cited.

[11] "Words like. . . 'equal' in any constitutional formula, expressing a principle that like shall be treated alike, cannot rise beyond tautology without deciding what is alike for constitutional purposes, *i.e.,* what are distinctions without a constitutionally permissible difference or what known forms of inequality the particular clause was meant to end.. . . "

*Tharalson v. State Dept. of Rev.,* 281 Or 9, 15 n. 10, 573 P2d 298 (1978).

the favored class on equal terms. *See also Jarvill v. City of Eugene,* 289 Or 157, 184-185, 613 P2d 1 (1980) (sustaining limitations on privilege to use public parking facilities).

 For like reasons, different treatment of comparable facts at different geographic locations within the state is not necessarily a denial of equal privileges or immunities under Article I, section 20. It may or may not be. The answer depends in part on the level of government that makes the law. When local governments make and administer their own policies, obviously these policies legitimately may produce different privileges or immunities from those available elsewhere, as long as the guarantees of Article I, section 20, are observed within the reach of the local law. The same may be true when state legislation leaves the choice among policies to local agencies. *See City of Klamath Falls v. Winters, supra* (choice between two channels of prosecution and appeal); *Olsen v. State ex rel Johnson,* 276 Or 9, 554 P2d 139 (1976) (level of school taxes and expenditures). On the other hand, when the state makes and administers its own laws, geographic distinctions are tested by the usual criteria of equal privileges and immunities or equal protection. *See, e.g. Bock v. Bend School Dist. No. 1,* 252 Or 53, 448 P2d 521 (1968) (sustaining teacher tenure law limited to large school districts); *State v. Kincaid,* 133 Or 95, 285 P 1105 (1930) (sustaining conviction under a license law that did not apply in populous cities); *State ex rel Bell v. Frazier,* 36 Or 178, 59 P 5 (1899) (sustaining special fees for court officials and sheriffs in populous county).

*Application to this case.* The foregoing summary of the several distinct issues that can arise under Article I, section 20, serves to isolate the issue that is presented by defendant's reliance on *Hawkins v. Superior Court, supra.*

 There is no question that the opportunity of a preliminary hearing is a "privilege" within the meaning of the constitutional guarantee, and potentially one of great practical importance. The grant or denial of this privilege is controlled by the state's choice, acting through the district attorney, to proceed by indictment or by information. Defendant's attack, under *Hawkins,* is on the "classification" between persons who are charged by information and

accorded a preliminary hearing and persons who are indicted and denied such a hearing. He does not assert that he was singled out for discriminatory treatment either as an individual or as a member of a disfavored minority,[12] or that in practice the privileges of state law do not "upon the same terms. . . equally belong to all citizens" throughout the state, instead giving the privilege to one citizen and refusing it to his "neighbor. . . in the same situation," *In re Oberg, supra,* without the use by prosecutors of any "yardstick or semblance of classification which would enable the district attorney to determine under what circumstances an information should be filed," *State v. Cory, supra,* 204 Or at 240. Rather, the *Hawkins* attack is directed simply at the coexistence of the two alternative procedures by which to initiate a criminal prosecution, one of which includes a preliminary hearing and the other of which does not.

■　　In *City of Klamath Falls v. Winters, supra,* this court also dealt with the existence of two separate procedures available to prosecute the same offense either in a municipal court, with a new trial in circuit court but no further appeal, or in a district court with an appeal to the Court of Appeals. There the court found it "difficult to state categorically which system offers greater advantages to defendants." 289 Or at 761. In the present case, we agree with the California court in *Hawkins* that the opportunity of a preliminary hearing, with the procedural rights described above, offers important advantages over prosecution upon an indictment without a preliminary hearing.

■　　We do not follow the *Hawkins* court to the conclusion, however, that this difference between two available procedures necessarily represents a denial of equal protection of the laws, regardless of showing which defendants receive one or the other procedure. *Hawkins* reached this conclusion in "classification" terms, by defining as two

---

[12] *Jones v. Helms* rejected an equal protection attack on a differential penalty law. It stated:

"The Equal Protection Clause provides a basis for challenging legislative classifications that treat one group of persons as inferior or superior to others, and for contending that general rules are being applied in an arbitrary or discriminatory way. The portion of the Georgia statute at issue in this case applies equally to all parents residing in Georgia; nothing in appellee's argument or in the record suggests that the statute has been enforced against appellee any differently than it would be enforced against anyone else who engaged in the same conduct."

(citing *Yick Wo v. Hopkins,* 118 US 356 (1886). *Jones v. Helms,* 449 US 1122, 101 S Ct 937, 67 L Ed 2d 108 (1981)).

classes those who are indicted and those who are charged by information. But we think this is an example of the "circular" use of the concept of "class" mentioned above. The distinction to be tested is the use or nonuse of preliminary hearings. The "classes" said to fail the test of equal protection are the "class" of those defendants who receive preliminary hearings (because charged by information) and the "class" of those who do not (because indicted). But these defendants do not exist as categories or as classes with distinguishing characteristics before and apart from a prosecutor's decision how to charge one, or some, or all defendants. Aside from the manner in which the decision is made, *see City of Klamath Falls, supra,* 289 Or at 774-775 (Lent, J, dissenting), defendants charged under either procedure are "classes" only as an effect of the dual procedural scheme itself. As in *City of Klamath Fallas, supra,* "these defendants [i.e. those who do not receive a preliminary hearing] are not denied such a 'privilege' as individual persons, but only because they are members of a 'class' of persons who are prosecuted [by indictment] as distinct from persons prosecuted [on an information]." 289 Or at 766.

██ ██ Each of the two procedures, however, is expressly authorized by the constitution itself. Properly administered, each satisfies the fourteenth amendment. *Hurtado v. California,* 110 US 516, 28 L Ed 232 (1884); *cf. Beck v. Washington,* 369 US 541, 82 S Ct 955, 8 L Ed 2d 98 (1962); *Cassell v. Texas,* 339 US 282, 70 S Ct 629, 94 L Ed 839 (1950). As stated above, the administration of laws and procedures provided in the constitution nonetheless must meet other constitutional standards, but the mere coexistence of the two procedures so as to limit preliminary hearings to one of them does not constitute forbidden class legislation. Without a showing that the administration of Or Const Art VII, § 5 and ORS 135.070—135.185 in fact denied defendant individually, or a class to which he belongs, the equal privilege of a preliminary hearing with other citizens of the state similarly situated, the circuit court did not err in denying the motion to dismiss the indictment.

*Fourteenth amendment equal protection.* This court often has stated that for most purposes analysis under Article I, section 20 and under the federal equal protection clause will coincide, *see, e.g., School Dist. No. 12 v. Wasco County,* 270 Or 622, 529 P2d 386 (1975); *State v. Savage,* 96 Or

53, 184 P 567 (1919), although of course a law found to be invalid under Article I, section 20 would not also be tested under the federal constitution. In this case, as in *Jarvill v. City of Eugene, supra,* we conclude that the same reasons why the challenged scheme does not on its face violate Article I, section 20, also suffice for it to survive similar scrutiny under the fourteenth amendment. 289 Or at 184, 185.[13] Defendant has cited no decision of the United States Supreme Court to compel a contrary conclusion, and *Hawkins,* as stated above, was decided under the California constitution.

## II. Denial of immunity.

Defendant also moved to dismiss the indictment on the grounds, first, that the state's decision to prosecute defendant and grant immunity to potential codefendants were made "without benefit of or reference to any written or otherwise articulated standards and guidelines" and without judicial scrutiny, and second, that the state thereby was able to obtain the testimony of witnesses who would not testify without immunity while denying defendant similar access to testimony, in both respects denying him equal protection of the law.

The facts are that defendant was one of four students at Oregon State University implicated in the theft of chairs from a university basement. Two of the students were granted full immunity from prosecution and became prosecution witnesses against defendant. The circuit court denied defendant's motion, citing *State v. Grabill,* 34 Or App 639, 579 P2d 316 (1978), in which the Court of Appeals held that *Wardius v. Oregon,* 412 US 470, 93 S Ct 2208, 37 L Ed 2d 82 (1978), did not require giving a defendant equal power with the state to immunize a witness from prosecution.

Defendant criticizes *Grabill,* arguing that the issue is not equal power to immunize a witness from prosecution but only the limited opportunity to compel a reluctant witness to testify by assuring the witness that his testimony cannot later

---

[13] The court rejected such a claim asserted under the federal equal protection clause in *Bailleaux v. Gladden,* 230 Or 606, 370 P2d 722 (1962), following *State v. Hicks,* 213 Or 619, 325 P2d 794 (1958), apparently distinguishing *Yick Wo v. Hopkins,* 118 US 356, 6 S Ct 1064, 30 L Ed 220 (1885), by the fact that Hicks and Bailleaux claimed to have been discriminated against because they were *not* members of a minority race. It is doubtful that those opinions could survive modern equal protection analysis, let alone Article I, section 20.

be used against himself. The distinction may be well taken. Nevertheless, it does not help defendant's attack on the trial court's denial of his motion. As stated above, the motion claimed a denial of equal protections. *Wardius* was a decision under the fourteenth amendment's due process clause. Article I, section 20, speaks of equal privileges or immunities between citizens, not between a citizen and the government, and defendant points to no contrary interpretation of the equal protection clause.[14]

The Court of Appeals rejected defendant's attack on the grant of immunity to the other potential defendants by stating that "[t]he district attorney, as the prosecutor, answers to the electorate for the conduct of his office" and that the exercise of his discretion is "not subject to judicial supervision." 47 Or App at 391-392. That reason overstates the point. State and local officials, school board members, sheriffs, even judges answer to the electorate for the conduct of their offices and are nonetheless held to constitutional limits in the exercise of the discretion entrusted to them. District attorneys are state officers applying statewide, not local law.[15] Their discretionary decisions, even if not subject to judicial "supervision," are not immune from judicial scrutiny. *See, e.g., State v. Jones,* 279 Or 55, 566 P2d 867 (1977); *In re Roger Rook,* 276 Or 695, 556 P2d 1351 (1976); *State v. Langley,* 214 Or 445, 315 P2d 560, 323 P2d 301 (1958). As stated in *Dickinson v. Davis,* 277 Or 665, 673, 561 P2d 1019 (1977), about penalties under the motor carrier laws,

> "[d]iscretion is not a magic word. It is only a range of responsible choice in pursuing one or several objectives more or less broadly indicated by the legislature (or, in Oregon, sometimes by the people themselves) under various circumstances pertinent to those objectives. This applies to a discretionary choice of sanctions just as to other delegated authority."

---

[14] Moreover, defendant did not call a witness who refused to testify without immunity against later use of his testimony, nor did he otherwise show that such testimony would have been available to him. Under the circumstances, it is not apparent how the issue could be raised on a motion to dismiss the indictment.

[15] Or Const Art VII (orig), § 17 provided:

"There shall be elected by districts comprised of one, or more counties, a sufficient number of prosecuting Attorneys, who shall be the law officers of the State, and of the counties within their respective districts, and shall perform such duties pertaining to the administration of Law, and general police as the Legislative Assembly may direct."

*See also* ORS 8.650 - 8.680.

As far as equal protection is concerned, the principles of analysis would be similar to those set forth in Part I, above. We may assume that there are impermissible reasons for granting immunity to one or a class of citizens; those, after all, are the very terms of Article I, section 20. *See also* note 12 *supra; In re Roger Rook, supra; State v. Langley, supra.* However, as with respect to his motion to dismiss the indictment for lack of a preliminary hearing, defendant has made no effort to show that the handling of his case violated those principles. Rather, he attacks the range of the prosecutor's discretion without previously stated standards as a denial of equal protection on its face. We do not believe equal protection goes so far as to require previously stated standards as long as no discriminatory practice or illegitimate motive is shown and the use of discretion has a defensible explanation. *See Dickinson v. Davis, supra,* 277 Or at 673, K. C. Davis, *Administrative Law of the Seventies,* §§4.08, 28.00-28.00-6 (1976).

The Court of Appeals found that there was such an explanation in this case.

> "The evidence showed that a number of persons were involved in the criminal activities for which defendant was indicted. Several of those individuals pleaded guilty to one or two charges and were granted immunity from further prosecution in exchange for their testimony against defendant before the grand jury and at his several trials. The prosecutor in charge of the cases testified that he treated defendant differently because the investigation showed that defendant was the instigator of many of the crimes and had demonstrated that he was a greater threat to society than the other individuals."

47 Or App at 392. We agree with the Court of Appeals that it was not error to reject the motion to dismiss the indictment.

Affirmed.

**TONGUE, J.,** specially concurring.

I concur in the result reached by the majority. I disagree, however, with the lengthy discussion by the majority of the reasons why the denial of defendant's demand for a preliminary hearing did not violate his rights under Article I, Section 20 of the Oregon Constitution.

To anyone reading the majority opinion it would appear that this problem was the primary focus of the contentions by the parties on the appeal of this case. In defendant's brief to the Court of Appeals, however, defendant did not cite Article I, Section 20 of the Oregon Constitution, much less discuss in any detail its application in this case, but contended only that the disparity between the procedural rights afforded defendants charged by information and by indictment resulted in "constitutionally infirm inequities," citing the California case of *Hawkins v. Superior Court,* 150 Cal Rptr 435, 586 P2d 911 (1978).[1]

In defendant's petition for review to this court defendant not only did not cite Article I, Section 20, but appears to have abandoned the contention that his rights under Article I, Section 20 of the Oregon Constitution were violated. Thus, defendant's contention in this court is that:

"The present constitutional framework in Oregon violates federal equal protection and due process guarantees.

"It is axiomatic that State constitutional provisions cannot be violative of federal constitutional rights any more than State legislative enactments can.

"* * * * *

"This State's failure to afford procedural protections to Defendants is as much a denial of federal equal protection guarantees as the denial of substantive rights under the law."

At the time of oral argument in this case, defendant's counsel was specifically asked whether he relied upon Article I, Section 20. His reply was that he relied upon federal equal protection and did not rely upon Article I, Section 20. In any event, he made no attempt to do so in the course of his argument before this court.

---

[1] This court has previously held in *Megdal v. Board of Commissioners,* 288 Or 293, 296, 605 P2d 273 (1980), that:

"* * * Constitutional claims should identify the provisions of the constitution, state and federal, that the governmental action is said to contravene and should show the relevance of these provisions to the claim."

To the same effect, *see Rogers v. Department of Revenue,* 284 Or 409, 412 n. 2, 587 P2d 91 (1978), and *Fifth Avenue Corp. v. Washington Co.,* 282 Or 591, 594 n. 2, 581 P2d 50 (1978). See also Linde, Without Due Process, 49 Or L Rev 125, 142-43, 183 (1969).

Indeed, the majority in this case recognizes that "defendant has made no effort to show that the handling of his case violated those principles," i.e., the "principles" of Article I, Section 20 of the Oregon Constitution (291 Or at 246).

On this record it is interesting, to say the least, that the opinion by the majority has disposed of defendant's contention that the denial of a preliminary hearing violated his federal constitutional rights to equal protection in one paragraph (291 Or at 243-44), while devoting eight pages to a discussion of defendant's rights under Article I, Section 20 of the Oregon Constitution (291 Or at 235-243).

In the course of that lengthy discussion, the majority not only traces the development of the caselaw under Article I, Section 20, but undertakes an analysis of that constitutional provision and its application in various situations including, but not limited to, the problem presented in this case--all without the benefit of the adversary process and despite the fact that no such analysis was contended for by any party to this case.

An example may be found in that portion of the majority analysis of Article I, Section 20 as that analysis relates to defendant's demand for a preliminary hearing when the prosecution is by indictment, rather than by information. There the majority discusses the effect of the fact that the discretion accorded to prosecuting attorneys to charge either by information or by indictment is also based upon provisions of the Oregon Constitution, Article VII, Section 5 (291 Or at 243). Indeed, the fact that such a procedure is expressly authorized by Article VII, Section 5 may well be the reason why defendant chose to abandon reliance upon the "equal privilege" provisions in the Oregon Constitution, Article I, Section 20, and to rely solely upon the "equal protection" provisions of the Federal Constitution.

Nevertheless, the majority undertook to decide this important question by its holding in a footnote that:

"The fact that a procedure, a power, or a program is itself stated in the constitution, as are the provisions for indictment and information, does not relieve them from compliance with other constitutional standards unless these are expressly excluded. There are many such provisions placed in the Oregon Constitution (e.g. sale of alcoholic liquor, art I, § 39, educational funding, art VIII, §§ 2-5, and the bonding authorities of article XI-A through H) that are not thereby placed beyond the guarantees in article I, the Bill of Rights." (291 Or at 235, n. 5).

This may or may not be correct, but it is a holding made without benefit of the adversary process and one that may have widespread effect. Suppose, as an example, that the people of Oregon adopt by initiative a constitutional amendment providing either for mandatory minimum sentences or for a death penalty. Would such an amendment to the Oregon Constitution be invalid under the holding by the majority in this case because it conflicts with Article I, Section 15, which provides that "[l]aws for the punishment of crime shall be founded on the principles of reformation, and not of vindictive justice"?

The majority opinion, in its lengthy discussion and analysis of Article I, Section 20, without benefit of the adversary process, is reminiscent of the recent opinion in *Sterling v. Cupp,* 290 Or 611, 625 P2d 123 (1981), joined by two other members of this court, in which the writer of that opinion undertook to decide that case upon the basis of another provision of the Oregon Constitution and on a theory completely different than the theory on which the case had been tried and briefed by the parties on appeal and petition for review.

In a specially concurring opinion in that case it was said, after citing decisions of the court holding that it will not decide a case upon a theory different from the theory on which the case was tried, that:

"If the adversary process, which is basic to our system of jurisprudence, is to be respected, the fact that this court is now a court of review, rather than a court of direct appeal, cannot properly justify a different result because to hold to the contrary would leave the parties free on petitions for review to propose, if not demand, that this court reverse either the trial court or the Court of Appeals for reasons based upon theories completely different from the theory upon which the case was both tried and appealed to the Court of Appeals." *(Sterling v. Cupp,* 290 Or at 635).

Finally, I must concur in the result reached by the majority by a specially concurring opinion because otherwise I would be acquiescing in the long delay in the decision of this case. This is another case which was "assigned but unwritten" for approximately six months before a proposed opinion was written and one which decides a case primarily upon the basis of an elaborate discussion and analysis of a

provision of the Oregon Constitution which was not relied upon or discussed by the parties either on appeal to the Court of Appeals or on petition for review to this court.[2]

---

[2] See concurring opinion in *Sterling v. Cupp,* 290 Or 611, 625 P2d 123 (1981). Cf. concurring opinions in *Ore-Ida Foods, Inc. v. Indian Head Cattle Co.,* 290 Or 909, 627 P2d 469 (1981); *State v. Quinn,* 290 Or 383, 623 P2d 630 (1981); *Haynes v. Burks,* 290 Or 75, 619 P2d 632 (1980); and *State v. Classen,* 285 Or 221, 590 P2d 1198 (1979).