Argued and submitted January 30, 1981, affirmed January 25, 1982

## STATE OF OREGON,
### *Respondent,*

## WALTER WAYNE HOWARD,
### *Appellant.*

## (No. C79-10-33853, CA 17384)

639 P2d 664

John Daugirda, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

William F. Gary, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James M. Brown, Attorney General, John R. McCulloch, Solicitor General, and John C. Bradley, Assistant Attorney General, Salem.

Before Buttler, Presiding Judge, and Joseph, Chief Judge,* and Warden, Judge.

BUTTLER, P. J.

---

* Joseph, C. J., *vice* Warren, J.

## BUTTLER, P. J.

Defendant seeks reversal of his convictions for rape in the first degree and robbery in the third degree, assigning as errors (1) the denial of his pretrial motion to suppress the photographic throw-down identification of defendant as unduly suggestive, and (2) the denial of his request for a preliminary hearing after indictment. We affirm.

■ Defendant's second contention was disposed of in *State v. Clark,* 291 Or 231, 630 P2d 810 (1981), and *State v. Edmonson,* 291 Or 251, 630 P2d 822 (1981). In those cases the court held that there was no denial of equal protection absent a showing in a given case how the choice of procedure was administered, and "whether [the state] offers or denies preliminary hearings to individual defendants, or to social, geographic, or other classes of defendants (apart from the 'classification' formed by the choice itself) purely haphazardly or otherwise on terms that have no satisfactory explanation under art I, § 20 [of the Oregon Constitution]. * * * " *State v. Edmonson, supra,* 291 Or at 253-54. For the same reason, the court rejected defendant's claim under the Fourteenth Amendment to the United States Constitution. Because defendant made no such showing here, the trial court did not err in denying defendant's request for a preliminary hearing.

In considering defendant's first assignment of error, a brief review of the facts is necessary. On October 26, 1979, the victim left the last of several bars in which she had been drinking and walked into a well-lit parking lot, when she noticed three men following her. The victim testified that she noticed defendant, in particular, at that time because of his large size. She was surrounded by the men, and defendant pushed her into the backseat of a car. When the car door opened, the interior light came on, at which time she was able to see defendant at close range. After the doors were shut and locked, the victim was driven off in the car.

Defendant sat in the backseat with her and talked to her for about ten minutes, during which time she was watching him. The interior of the car was illuminated by street lights. Defendant told her to give him her purse; when she said she had no money, defendant hit her and

grabbed her purse, taking various items from it. Defendant told her to take off her clothes, and when she did not respond, he pulled them off, hit her again and then raped her. Those events occurred over approximately 20 minutes, during which the victim said she was able to see defendant's face.

After the rape, defendant climbed over the front seat, and victim was successively raped and sodomized by the other two men in the car. When she was finally released from the car, it was early in the morning of October 27. The victim gave a description of defendant to the police at approximately 2:30 p.m. on that day. She described him as "a large Negro male, approximately six feet to six feet two weighing from 185 to 200 pounds." (In fact, he was 6 feet 2-1/2 inches tall and weighed 235 pounds.) On the morning of October 29, victim was shown a six-person photographic throw-down, which included a picture of defendant and a picture of one of defendant's alleged accomplices. She was told by the police officers that the throw-down included two suspects. She identified promptly the alleged accomplice and narrowed the selection of the other suspect to a photograph of defendant and that of another person. She informed the officers that she could not identify the other suspect, because she remembered him as being much larger than he appeared in the photograph.

Later the same day, defendant was re-photographed. The new photograph was included in a second photographic throw-down shown to the victim the following day. Photographs of none of the subjects from the first throw-down were included in the second throw-down except the new photograph of defendant. The victim was informed again that a suspect was included in the throw-down. She readily identified the new photograph of defendant.

■ ■ We agree that both photographic throw-downs were suggestive, because the victim was told in each case that suspects were among the photographs from which she was to choose. *State v. Classen*, 285 Or 221, 590 P2d 1198 (1979).[1] It is less clear that the suggestiveness of the

---

[1] In *Classen*, the court quoted with approval from *Sawyer v. State*, 260 Ind 597, 602, 298 NE2d 440 (1973), the following language:

identification was increased by including only one suspect's photograph (defendant's) in both throw-downs. Even assuming that the procedure as a whole was unduly suggestive, the identification of defendant was nonetheless reliable. Considering all of the factors enunciated in *State v. Classen, supra,*[2] to be relevant to a determination of whether the identification was obtained from a source independent of the suggestive process, we conclude that the victim's identification of defendant, independent of the suggestive procedure, was sufficiently reliable to be admitted into evidence. There was little likelihood of misidentification.

Defendant contends that the victim's admission that she was intoxicated when she first entered the automobile with the three men vitiates her identification. At most, the victim's condition would go to the weight of the evidence. There was no error.

Affirmed.

---

" '* * * A witness may thus be lead to feel that he has an obligation to choose one of the participants in the display since the police evidently are satisfied that they have apprehended the criminal. The result may be that the witness strains to pick someone with familiar characteristics or someone who most resembles the actual criminal or the result may be that the witness will choose the one least dissimilar by the process of elimination...' " 285 Or at 235.

[2] Those factors were summarized in *Classen:*

" * * * [T]he opportunity that the witness had at the time to get a clear view of the persons involved in the crime and the attention he or she gave to their identifying features, the timing and completeness of the description given by the witness after the event, the certainty expressed by the witness in that description and in making the subsequent identification, and, of course, the lapse of time between the original observation and the subsequent identification. * * * " 285 Or at 232-33.