Argued and submitted February 28, remanded with instructions; otherwise affirmed
May 10, 1989

STATE OF OREGON,
*Respondent,*

*v.*

WALTER M. SCOTT,
*Appellant.*

(TM87-5734; CA A49380)

773 P2d 394

Glenn N. Solomon, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

John T. Bagg, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

**WARREN, J.**

In this action for driving under the influence of intoxicants, defendant challenges conditions of probation imposed by the trial court.

After a jury verdict of guilty, the trial judge suspended imposition of sentence and placed defendant on probation. The terms of probation included suspension and confiscation of defendant's California driver's license.[1] Benton County, the county with jurisdiction over this case, is participating in a pilot program allowing the court to require an interlock device during a DUII suspension.[2] On the trial court's notice of suspension to the Department of Motor Vehicles, the judge checked a box requiring an ignition interlock device as a requirement for a hardship permit, although that was not specified in the judgment.

Defendant first questions the court's authority to confiscate an out-of-state driver's license pursuant to ORS 809.250(1),[3] arguing that the confiscation conflicts with the Interstate Driver License Compact. ORS 802.540. Article III of the compact requires the licensing authority of a state that is a party to the compact to report details of a conviction to the home state of the offender, if that state is also a party to the compact. Article IV requires the home state to give the same effect to the conduct reported as it would if the conduct had occurred in the home state. Defendant argues that that language prevents the confiscation and suspension by Oregon of a California driver's license and that those options must be left to California in applying California law to the offense.

■ ORS 809.250 gives an Oregon court authority to suspend driving privileges in Oregon. It also gives a court authority to confiscate an out-of-state driver's license, if the court

---

[1] The probation terms state, in pertinent part:

"11) Defendant's driver's license is suspended beginning July 13, 1988 to July 13, 1989.

"12) Defendant shall deliver his driver's license to the Court."

[2] The device requires the operator to blow into a machine that measures blood alcohol and prevents vehicle ignition if a particular percentage of alcohol is present.

[3] ORS 809.250(1) states:

"A court shall take immediate possession of any license or driver permit held by a defendant that is issued by any jurisdiction if the court imposes a suspension under ORS 809.120, 809.240 or 809.270."

imposes a suspension. Confiscation eliminates physical evidence of driving privileges while defendant remains in Oregon and forces the home state to review the details of the conviction, as required by Article IV of the compact, if defendant requests a replacement license. The confiscation does not conflict with the compact.

The state concedes that, under the compact, an Oregon court has no authority to suspend driving privileges in another state. The trial judge improperly interpreted ORS 809.250 to authorize suspension of driving privileges in California and probation condition (11) of the judgment must be modified to read:

"(11) Defendant's Oregon driving privileges are suspended beginning July 13, 1988 to July 13, 1989."

Defendant also assigns as error the requirement of the ignition interlock device on the ground that the selection of Benton County to participate in the pilot program violated the constitutional principle of equal protection. The requirement that defendant install an interlock device before he could apply for a hardship permit was specified in the notice of suspension to DMV, but was not a condition of probation set out in the judgment.

An unambiguous written judgment is controlling, and we may not look beyond the judgment to determine a judge's intention, unless a clerical error is apparent from the face of the entire court record. *State v. Mossman,* 75 Or App 385, 388-89, 706 P2d 203 (1985). In this case, the judge was required by statute to order the use of the device after a DUII conviction.

"[T]he court shall, in addition to any other sentence imposed, impose a requirement that an approved ignition interlock device be installed in any vehicle owned or operated by the person before the person is eligible for a hardship driver permit under ORS 807.240." Or Laws 1987, ch 746, § 2(1) (Chapter 746).

The court is then required to send a copy of its order to install the ignition interlock device to MVD. Chapter 746, § 3(1). Because Benton County was selected to participate in the pilot program, the judge was required to order the interlock device "in addition to any other sentence imposed," which he did in the notice of the suspension to the MVD. His actions

make it obvious that the judge intended that the condition be imposed as part of the sentence and his failure to do so is in the nature of a clerical error. It is necessary to remand this case to the trial court so that the error in the judgment can be corrected. For the sake of judicial economy, however, we address defendant's constitutional arguments. We treat the interlock device requirement as part of the judgment on conviction, which is subject to our review. ORS 138.040; *State v. Donovan,* 307 Or 461, 475, 770 P2d 581, (1989).

Defendant argues that additional burdens are imposed on the participants in the pilot program and that the selection of Benton County to participate was "haphazard," in violation of the Privileges and Immunities Clause, Article I, section 20, of the Oregon Constitution, and the Fourteenth Amendment.

■ The act establishing the pilot program directs the Traffic Safety Commission to select an appropriate number of Oregon counties to participate in the program. Chapter 746, § 1(1). The act took effect in October, 1987, and will stand repealed on June 30, 1989. Chapter 746, § 12.

Article I, section 20, provides:

"No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens."

To prove a violation of the clause, a defendant must first show that he was denied a privilege or immunity. The program requires that the offender who wants a hardship permit must pay the "reasonable costs of leasing, installing, and maintaining the device," unless the offender is indigent. Chapter 746, § 2. Therefore, according to defendant, offenders in nonparticipating counties have the privilege of avoiding that cost.

■ Constitutional claims under Article I, section 20, are of two types: inequality of treatment as an individual or inequality of treatment as a class. Individual inequality occurs when "the government has made or applied a law so as to grant or deny privileges or immunities to an individual person without legitimate reasons related to that person's individual situation." *State v. Clark,* 291 Or 231, 239, 630 P2d 810 (1981); *see also City of Salem v. Bruner,* 299 Or 262, 269, 702 P2d 70, 74 (1985). In this case defendant is treated the same as all

other residents of Benton County. There is no discretion for individualized treatment, so individual inequality analysis does not apply.

■■ To claim inequality of treatment as a class, defendant must be a member of a true class, whose disparate treatment is "by virtue of characteristics they have apart from the law in question." *Hunter v. State of Oregon,* 306 Or 529, 761 P2d 502 (1988), *quoting State v. Clark, supra,* 291 Or at 240. In *Clark,* the Supreme Court defined "past or present residency" as a true class. 291 Or at 240. Because county residents have that status independently and without regard to the law in question, residents of the group of counties selected for participation in the pilot program form a true class.

The Supreme Court also pointed out in *Clark* that state legislative schemes based on geographic distinctions are tested by whether the state had a rational basis for such a classification. 291 Or at 241; *see also Bock v. Bend School Dist. No. 1,* 252 Or 53, 55, 448 P2d 521 (1968). If the state has a rational basis for the classification, the requirement to install the device does not violate Article I, section 20.

■ Oregon is testing a device that would allow DUII offenders limited driving privileges while attempting to prevent them from driving while under the influence of intoxicants. This pilot program was designed by the legislature to be put into effect in a limited number of counties for a specific length of time. The California courts have found that a geographically limited experimental alcohol treatment program for offenders convicted of driving under the influence of alcohol does not violate the Privileges and Immunities Clause of the California Constitution, which has language similar to that of Oregon.[4] *McGlothen v. Dept. of Motor Vehicles,* 71 Cal App 3d 1005, 140 Cal Rptr 168 (1977); *Dept. of Mot. Veh. v. Superior Ct., San Mateo Cty.,* 58 Cal App 3d 936, 130 Cal Rptr 311 (1976) *(Hardin).* The court stated in *Hardin:*

"The relationship between the limitation of the program to four counties and the purpose of the statute is clear. This

---

[4] Article I, section 7(b), of the California Constitution provides:

"A citizen or class of citizens may not be granted privileges or immunities not granted on the same terms to all citizens. Privileges or immunities granted by the Legislature may be altered or revoked."

court may take judicial notice of the fact that the problems of alcoholism and the drinking driver are serious ones for which our society has found no easy solution. The intent of the statute is obviously to experiment with alcoholism treatment programs on a limited basis and for a limited time. If these programs are proven effective, they may be implemented on a statewide basis; if the scheme is not successful, it may be abandoned, and the state will not have incurred the burden of funding and administering it on a statewide basis." 58 Cal App 3d at 941-42.

Similarly, the Oregon pilot program tests the effectiveness of a device that has the purpose of protecting public safety with a minimal impact on the resources of the state and its citizens. Those are legitimate legislative objectives that justify the creation of the class.[5] The pilot program does not violate Article I, section 20. We conclude that, for the same reasons, the program does not violate the Fourth Amendment. *State v. Clark, supra,* 291 Or at 244.

Remanded with instructions to modify probation condition (11) as provided in this opinion and to amend the judgment of conviction to include a provision that defendant be required to have an interlock device installed in any vehicle owned or operated by him before he can be eligible for a hardship driver's permit; otherwise affirmed.

---

[5] Defendant claims that the counties were chosen randomly and that random choice violates equal protection. Nothing in the record supports those claims, and defendant does not suggest that the counties were chosen in a discriminatory manner.