# STATE v. DOUGLAS COUNTY ROAD COMPANY.

QUO WARRANTO—PRIVATE RELATOR.—A private relator, whose name may be mentioned in a *quo warranto* information, in a strictly state action, is not a party thereto, and cannot control the proceeding.

DISTRICT ATTORNEY'S POWER.—When a *quo warranto* information is filed by the district attorney, under the code, he has as much the sole control over it as the attorney general would have in a like case at common law.

APPEAL from Douglas County.

After the transcript had been filed in this case, and the cause placed upon the docket, J. W. Hamilton, Esq., district attorney of the second judicial district, appeared and filed a

motion to dismiss the appeal, because, as he alleged, he had not taken the same for the state, or authorized any one to do so for him.    Messrs. Wm. R. Willis and R. S. Strahan opposed the motion; contending that the appeal was regularly taken, and that the district attorney had no authority to dismiss it.

*J. W. Hamilton, district attorney,* for the motion.

*Wm. R. Willis and R. S. Strahan,* contra.

*N. B. Knight,* for respondent.

By the Court, WALDO, J.:

The appellant, the Douglas County Road Company, is a private, as distinguished from a distinctly public, corporation.   (*Douglas County Road Company* v. *Abraham,* 5 Or., 518.)   Its object, as specified in its articles of incorporation, was "to build and keep in repair, a good and substantial plank, clay and gravel wagon road through the big canyon, in Douglas county, state of Oregon, and to receive tolls for traveling over said road."   The object of this action is to annul the existence of the corporation.

Section 351 of the code of civil procedure abolished the writ of *quo warranto* and the *quo warranto* information. But it is only the form of the proceeding that is done away with by that section.   The remedies formerly had under those forms are now had under the civil action specified in sections 353 and 354.   (*People* v. *Hall,* 80 N. Y., 119.)

The action lies only for franchises exercised without or in violation of legislative grant, by which, in this country, all franchises are held.   (*The People* v. *Utica Insurance Co.,* 15 John, 358; *Bank of Augusta* v. *Earle,* 13 Pet.. 595; Aug. and Ames on Cor., sections 731, 737; *United States* v. *Lockwood,* 1 Pinney's Rep. [Wis.,] 363; *Territory* v. *Lockwood,* 3 Wall., 236; Cole on Informations, 111.)

In England, the attorney general could file *quo warranto* and other informations at his discretion.     But in practice, he seldom did so, except where the prerogatives of the crown were specially concerned.    Where the interests of individuals were intermingled with those of the crown, the master of the crown office in king's bench, was the usual officer to exhibit informations.    In the exercise of this function, he stood in a relation to individuals similar to that of the attorney general to the crown.    (Cole on Informations, 110; *Goddard* v. *Smithett*, 3 Gray, 116.)    But in 1693, the statute of 4 and 5 W and M., c. 18, relating to trespasses and batteries, and other misdemeanors, was passed, for the purpose, as Mr. Justice Wilmot says, in *Rex* v. *Marsdon*, 3 Burr, 1817:  " To prevent the master of the crown office from vexing and oppressing the subject, and entrusted this court with the power of inspecting the filing of informations, and seeing that he did not exercise his power to the oppression of the subject, or without sufficient ground and foundation; so that the act was made to check and control the power of the master of the crown office; not to give him a right to exercise a power which he never exercised before; quite the contrary."    After this act, the master of the crown office could not file an information without leave.    This statute has been shown to govern *quo warranto* informations by the master of the crown office, the filing of which by that officer was not introduced but only regulated by the statute of 9 Anne.    (Cole on Informations, 126.)

This act required the relators name to be mentioned in the information, and this, and the previous act of W. and M., requiring the person at whose suggestion the suit had been instituted, to give an undertaking for costs, should prosecution fail, gave rise to the practice of filing *quo warranto* informations, entitled on the relation of private per-

sons—the relator being altogether the creature of statute. (Aug. and Ames on Cor., sec. 733; Cole on Informations, 127.)

But an information against a corporation as a body, to annul its corporate existence, could not be filed by the master of the crown office. Such informations were filed by the attorney general; and leave was not required—he was the sole judge of the propriety of filing the information. The law requiring leave of the court before an information could be filed, applied only to the master of the crown office. (*Rex* v. *Carmarthen*, 2 Burr, 869; *Murphy* v. *Farmer's Bank*, 20 Penn. St., 415; *Commonwealth* v. *Turnpike Co.*, 6 B. Monroe, 397.)

With us, the filing of *quo warranto* information, the several district attorneys possess the powers as well as those usually exercised by the attorney general, as by the master of the crown office; but the statute preserves, with few exceptions, the distinction between actions by them, acting *ex-officio* in the former capacity, and *ex-relatione* in the latter. (*Attorney General* v. *Railroad Co.*, 9 Vroom, 282; *The State* v. *Stewart*, 32 Mo., 379.)

Our statute limits the power of the district attorney, acting *ex-officio*, in requiring him to get leave. But when leave has been granted, the discretionary power of the court has been expended. (*The State* v. *Brown*, 5 R. I., 6.)

The district attorney is the law officer of the state, within the limits of his district, with the powers, in the absence of statutory regulation, of the attorney general at common law. (Constitution of Oregon, art. 7, sec. 17.) Therefore, when, as in the case before us, the district attorney files a *quo warranto* information in a distinctly state action, he has as much the sole control over it as the attorney general would have in a like case at common law. A relator cannot be a

party to the proceeding—is a mere stranger—and if his name is put in the information, it is surplusage. (*Rex* v. *Williams*, 1 Burr, 408; *The People* v. *The Trustees of Geneva College*, 5 Wen. 219.)

The reason is plain: the state, out of its sovereign power, has created the corporation for the purposes declared in its charter, and the same power must preside at its dissolution. The state may waive the forfeiture of the charter, and its power to do so, acting through its attorney, cannot be controlled by the court. (*State* v. *McConnell*, 3 Lea., [Tenn.,] 339; *Commonwealth* v. *Union Insurance Co.*, 5 Mass., 232; *The People* v. *Attorney General*, 22 Barb.; 117; *The People* v. *Tobacco Co.*, 42 How. Pr., 162; *The People* v. *Fairchild*, 8 Hun., 334; S. C., 67 N. Y., 334.