Argued and submitted June 10, affirmed November 23, 1994, petition for review denied March 7, 1995 (320 Or 588)

# STATE OF OREGON,
*Respondent,*

*v.*

# HARRY COLEMAN,
*Appellant.*

## (CR 92C21534; CA A80906)

886 P2d 28

J. Michael Alexander argued the cause for appellant. With him on the brief was Burt, Swanson, Lathen, Alexander, McCann & Smith, P.C.

Robert B. Rocklin, Assistant Attorney General, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Rossman, Presiding Judge, and De Muniz and Leeson, Judges.

ROSSMAN, P. J.

## ROSSMAN, P. J.

Defendant was convicted of 15 counts of aggravated theft in the first degree. ORS 164.057. The question on appeal is whether the indictment and prosecution of this case violated the constitutional requirement of separation of powers because the case was conducted by two assistant attorneys general who were appointed by the Marion County District Attorney to serve as deputy district attorneys.[1] We affirm.

Defendant was a manager and part owner of the Garden Valley Centre, a shopping mall developed by Umpqua Properties, Ltd., in Roseburg. Pacific First Bank made a $3.7 million construction loan to Umpqua Properties, and the Oregon Public Employes' Retirement System (OPERS) purchased 90% of the loan from the bank as an investment. Thereafter, another $1.8 million was loaned to Umpqua Properties by the bank; those loans were also purchased by OPERS. While managing the shopping mall, defendant submitted fifteen "draw requests" to Terry Canby, who was then the Oregon State Treasury investment officer in charge of OPERS' commercial mortgage program. Canby approved the requests and caused the OPERS trust fund, known as the Oregon Public Employes' Retirement Fund (OPERF), ORS 237.271(1), to distribute a total of $6.8 million to defendant. The draw requests, submitted by defendant's wholly owned corporation Colewest Investment, indicated that the draws were "for the benefit of the Garden Valley Centre in Roseburg," but they did not include a breakdown of the expenses for which each draw was needed. Evidence at trial showed that defendant used part of the OPERF money for real estate and personal purchases including property in Sutherlin, a vacation to Europe, jewelry and antiques. Defendant stipulated that a large portion of the funds expended by Colewest Investments was not for the benefit of Garden Valley Centre.

Two assistant attorneys general, appointed by the Marion County District Attorney to act as deputy district attorneys, conducted the investigation and procured the indictment against defendant. Defendant filed a motion to dismiss the indictment, arguing that "[t]here is nothing in

---

[1] Defendant's second assignment of error, which challenges the sufficiency of the evidence, does not warrant discussion.

the Constitution which permits an Assistant Attorney General to be appointed as a Deputy District Attorney." Defendant's motion was denied. After a bench trial, he was found guilty of all charges and sentenced to time in jail, probation, fines, restitution and costs that resulted in a final money judgment of $2,137,563.

Defendant's attack on the district attorney's use of assistant attorneys general to prosecute this case is two-fold. First, he contends that under the Oregon Constitution, a district attorney is a member of the judicial branch of government and, therefore, the prosecution of this case by executive branch officers (the two assistant attorneys general) constituted an improper infringement by the executive branch on judicial functions.[2] Second, he argues that the Attorney General cannot assume the role of a deputy district attorney unless directed by the Governor to do so.

■■ Defendant's first argument is without merit. Even assuming, for the sake of argument, that his motion to dismiss was a proper method by which to challenge the district attorney's appointments in this case,[3] defendant's contention that district attorneys are members of the judicial branch of government ignores established principles of constitutional construction. His position appears to be based entirely on the fact that Article VII (Original) of the Oregon Constitution contained the heading, "The Judicial Department," and section 17 of that Article created the office of district attorney.[4] From that, he concludes that district

---

[2] Article III, section 1, of the Oregon Constitution, provides:

"The powers of the Government shall be divided into three seperate [sic] departments, the Legislative, the Executive, including the administrative, and the Judicial; and no person charged with official duties under one of these departments, shall exercise any of the functions of another, except as in this Constitution expressly provided."

[3] The state suggests that the proper procedure would have been the filing of a proceeding in *quo warranto*. ORS 30.510; *State ex rel Madden v. Crawford*, 207 Or 76, 80-81, 295 P2d 174 (1956). Because of our conclusion, it is not necessary to decide that question in this case.

[4] Article VII, section 17 (Original), provides:

"There shall be elected by districts comprised of one, or more counties, a sufficient number of prosecuting Attorneys, who shall be the law officers of the State, and of the counties within their respective districts, and shall perform such duties pertaining to the administration of Law, and general police as the Legislative Assembly may direct."

attorneys are therefore members of the judicial branch of government. Not only does a heading lack any legal significance, but the clear and express terms of Article VII (Original) established that judicial powers are vested in the courts. Or Const, Art VII, § 1 (Original). Nothing in Article VII (Original) imbued district attorneys with any judicial powers.

■ Further, Article VII has been amended. In its amended form, it mentions district attorneys only with regard to their role in bringing criminal charges by means of an information or indictment. Section 2 of Article VII (Amended) preserves the prior constitutional provisions regarding the courts, jurisdiction and the judicial system, except to the extent that they have been expressly changed by the amendment and "until otherwise provided by law." The effect of amended section 2 was to retain the provisions of the original Article VII "only until changed by the legislature." *State v. Farnham*, 114 Or 32, 42, 234 P 806 (1925).[5] The parties agree that such statutory changes have been made. Most notably, the legislature has expressly designated district attorneys as prosecutors "on behalf of the state." ORS 8.660(1). Indeed, throughout Oregon's history, district attorneys have been regarded as state officers who act as prosecutors for the executive branch. *See, e.g., State v. Clark*, 291 Or 231, 245, 630 P2d 810 (1981); *State v. Douglas County Road Co.*, 10 Or 198, 201 (1882); *Rutherford v. City of Klamath Falls*, 19 Or App 103, 106, 526 P2d 645 (1974). They are not members of the judicial branch of government. Or Const, Art VII, § 1 (Amended) ("The judicial power of the state shall be vested in one supreme court and in such other courts as may from time to time be created by law.").

■ We turn to defendant's argument that the Attorney General, or in this case an assistant attorney general, may

Section 16 of Article VII (Original) addressed the election of sheriffs, but defendant does not argue that sheriffs are therefore members of the judicial branch of government.

[5] The Note preceding section 1 of Article VII (Original) provides:

"The provisions of original Article VII relating to courts, jurisdiction and the judicial system, by the terms of section 2 of the amended Article VII, are given the status of a statute and are subject to change by statutes enacted by the Legislative Assembly, except so far as changed by amended Article VII."

only be appointed to serve as a deputy district attorney if the appointment is made by the Governor.[6] That argument, too, fails. The office of the state Attorney General possesses "the same powers and prerogatives in each of the several counties of the state as the district attorneys have in their respective counties."[7] ORS 180.240. The Attorney General must "[a]ppear, commence, prosecute or defend any action, suit, matter, cause or proceeding in any court *when requested by any state officer*, board or commission when, in the discretion of the Attorney General, the same may be necessary or advisable to protect the interests of the state." ORS 180.060(1)(d). (Emphasis supplied.) Here, a state officer — the Marion County District Attorney — did request that two assistant attorneys general prosecute this case. The Attorney General "may" also be directed by the Governor to perform the duties of a district attorney, ORS 180.070, and upon such request, the Attorney General "shall" appear. ORS 180.060-(1)(b). We have found, and defendant has cited, no statutory or constitutional provision stating that the Governor alone possesses the power to make such requests. A district attorney, too, is authorized to appoint qualified persons to serve as deputy district attorneys. ORS 8.780; ORS 8.630. Accordingly, we hold that the Marion County District Attorney was authorized to appoint the two assistant attorneys general to serve as deputy district attorneys in this case.

Affirmed.

---

[6] We note the inconsistency of that argument, in light of defendant's position that district attorneys are officers of the judicial branch. If defendant's position were accepted, then it would follow that an executive branch official, such as the Governor, could not appoint a member of the executive, such as the Attorney General, to serve as a judicial branch officer.

[7] Defendant argues that ORS 180.240 should be construed narrowly, so that the Attorney General cannot without invitation or request serve as a district attorney in any case that the Attorney General chooses. However, we need not decide the scope of ORS 180.240 in this case, because the assistant attorneys general who conducted defendant's prosecution *were* requested to do so by the district attorney.